UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PIERRE MABILE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-1783** |
| **BP, P.L.C., et al.** | **SECTION "G"(2)** |

## ORDER

In this litigation, Plaintiff Pierre Mabile ("Mabile") alleges that he designed and manufactured a prototype (the "Mabile Cap") to stop the flow of oil during the well blowout on Deepwater Horizon, and that Defendants BP p.l.c., BP Exploration & Production, Inc., BP America Production Company, and BP America, Inc. (collectively "BP") used his design without compensating him. Mabile brings claims of conversion, unfair trade practices, and unjust enrichment against BP. Pending before the Court is BP's "Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim."[1] Having considered the motion, the memoranda in support, the memoranda in opposition, and the applicable law, the Court will deny the motion.

## I. Background

### A.    *Factual Background*

In his amended complaint, Mabile alleges that he designed and manufactured a prototype (the "Mabile Cap") to stop the flow of oil during the well blowout on *Deepwater Horizon*.[2] He alleges that his design contains a unique "flange on top of a flange" design and "contains a valve

---

[1] Rec. Doc. 30.

[2] Rec. Doc. 28 at 3–4.

1

to allow the oil to either be piped to the surface or to cement the well in."[3] According to Mabile, on June 15, 2010, he wrote a letter generally describing the Mabile Cap's functionality, and submitted it, along with a schematic drawing of the device, to BP through its website dedicated to soliciting ideas on how to stop the oil spill.[4] The letter informed BP that a demonstration of the Mabile Cap was going to be held on June 19, 2010, in Grand Isle, Louisiana.[5] Mabile also submitted this letter to BP's office in Houston, Texas.[6]

Mabile alleges that he demonstrated the Mabile Cap on June 19, 2010, for two BP engineers, Jason French ("French") and Thomas Pearce ("Pearce").[7] According to Mabile, French then immediately called another BP engineer, Al Ledet ("Ledet"), who requested that Mabile meet him later that day in Houma, Louisiana, to perform another demonstration of the Mabile Cap.[8] Mabile alleges that he performed a demonstration for Ledet and United States Coast Guard engineer, Kurt Hansen ("Hansen"), the same day.[9] Mabile states that Hansen, though a Coast Guard engineer, was acting on behalf of BP as an engineer and/or technical consultant to cap the oil flow.[10] Mabile recalls that Hansen called his idea the best design he had ever seen for capping the oil spill.[11] He alleges that, per Hansen's request, he left a schematic drawing of the Mabile Cap

---

[3] *Id.* at 4.

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* at 5.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

with Hansen and later emailed a digital copy of the drawing to Hansen on or around June 22, 2010.[12] Again, per Hansen's request, Mabile alleges that he sent Hansen a DVD of the Mabile Cap demonstration.[13]

According to Mabile, on or around July 11, 2010, BP began installing a "flange on top of a flange" device on the Deepwater Horizon oil spill that was "consistent with and identical to the form and function of the Mabile Cap."[14] On or around July 12, 2010, Mabile alleges that BP installed a sealing cap assembly ("the 3-ram Capping Stack"), which, like the Mabile Cap, was "used to plug the wellhead and allow oil to continue to flow through valves to vessels or other infrastructure."[15] He states that on July 15, 2010, the wellhead was capped and oil ceased gushing into the Gulf of Mexico.[16] Mabile argues that BP used his design to cap the oil well and has failed to acknowledge or compensate him for its use of his invention.[17]

**B. Procedural Background**

Mabile originally filed his petition for damages in the 32nd Judicial District Court for the Parish of Terrebonne.[18] BP removed the case to this Court on July 22, 2011.[19] This case was previously consolidated with MDL No. 2179 before Section "J" of this Court.[20] Mabile filed a

---

[12] *Id.*

[13] *Id.*

[14] *Id.* at 5–6.

[15] *Id.* at 6.

[16] *Id.*

[17] *Id.*

[18] Rec. Doc. 1-2.

[19] Rec. Doc. 1.

[20] Rec. Doc. 5.

3

motion to sever his action from the multi-district litigation, which was granted on October 16, 2015.[21] Mabile filed an amended complaint on December 7, 2015, alleging claims of conversion, unfair trade practices under Louisiana's Unfair Trade Practices and Consumer Protection Law ("LUTPA"),[22] and unjust enrichment.[23]

BP filed the instant motion on December 24, 2015.[24] Mabile filed his opposition on January 12, 2016.[25] With leave of Court, BP filed a reply on January 20, 2016.[26] The Court heard oral argument on the motion on February 17, 2016.[27] Following oral argument, BP filed a "Notice of Supplemental Authority" on February 19, 2016.[28] On February 19, Mabile also filed a "Post-Hearing Submission in Opposition to Motion to Dismiss."[29] With leave of Court, BP filed a response to Mabile's post-hearing submission on March 1, 2016.[30]

## II. Parties' Arguments

### A.    *BP's Arguments in Support of Dismissal*

BP presents three broad arguments in support of its motion to dismiss: (1) that Mabile fails to plausibly allege certain "essential" elements necessary to bring a state law "use-of-idea" claim;[31]

---

[21] *Id.*

[22] *See* La. Civ. Code § 51:1405(A).

[23] Rec. Doc. 28.

[24] Rec. Doc. 30.

[25] Rec. Docs. 31, 32.

[26] Rec. Doc. 38.

[27] Rec. Doc. 35.

[28] Rec. Doc. 41.

[29] Rec. Doc. 42.

[30] Rec. Doc. 46.

[31] Rec. Doc. 30-1 at 8.

4

(2) that Mabile fails to plausibly state a conversion, unfair trade practices, or unjust enrichment claim based on individual deficiencies in each of Mabile's claims;[32] and (3) that each of Mabile's claims are preempted by federal patent law.[33] Additionally, as a preliminary matter, BP requests that this Court take judicial notice of the MDL 2179 Court's Findings of Fact and Conclusions of Law from the MDL Phase II trial to consider alongside the pleadings when deciding BP's motion to dismiss.[34]

### 1.     Judicial Notice of MDL Phase II Findings

As an initial matter, BP argues that the Court may properly take judicial notice and consider the MDL 2179 Court's Findings of Fact and Conclusions of Law from the MDL Phase II trial ("MDL Phase II Findings") to decide if Mabile has failed to state his claims under a Rule 12(b)(6) motion to dismiss.[35] BP argues that it is permissible here for this Court to utilize the "items in the record of the case, related cases and matters of public record."[36] BP represents that, in the Fifth Circuit, this Court "may take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom."[37] BP states that both parties designated the MDL Phase II Findings to be part of the record in this matter when it was severed from MDL 2179, and that

---

[32] *Id.*

[33] *Id.* at 7.

[34] *Id.* at 15.

[35] *Id.*

[36] *Id.* (quoting *G.C.P. Tel. Cards LLC v. ADT Security Servs., Inc.*, No. 10-4305, 2011 WL 2118732, at *3 (E.D. La. May 24, 2011) (McNamara, J.)).

[37] *Id.* (quoting *Matter of Missionary Baptist Found. of Am., Inc.*, 712 F.2d 206, 211 (5th Cir. 1983)). *See also In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996) (rejecting argument "that the district court erred in examining the MDL 834 record in ruling on" a motion to dismiss because "ample authority exists which recognizes that matters of public record, including court records in related or underlying cases which have a direct relation to the matters at issue, may be looked to when ruling on a 12(b)(6) motion to dismiss").

Mabile attached two exhibits from the MDL Phase II Findings to his amended complaint.[38] Therefore, according to BP, the Court can properly consider the MDL Phase II Findings when determining BP's motion to dismiss Mabile's claims.[39]

### 2.   Essential Elements for "Use of Idea" Claims

In support of its motion to dismiss, BP first argues that because all three of Mabile's claims are premised upon BP's alleged use of Mabile's idea when BP created the 3-Ram Capping Stack, Mabile must additionally allege that his idea was (1) novel, (2) disclosed in confidence, and (3) used by BP.[40] BP bases its argument on *Official Airlines Schedule Info. Serv., Inc. v. E. Air Lines, Inc.*, a Fifth Circuit case affirming a Florida federal district court's order granting summary judgment against a plaintiff's claims for alleged appropriation of plaintiff's idea.[41] There, the Fifth Circuit, citing several other circuits,[42] held that to find a defendant liable for the alleged appropriation of an idea, a plaintiff must satisfy the necessary prerequisite elements of novelty,

---

[38] *Id.* at 16.

[39] For example, BP argues that the MDL Phase II Findings show that BP's 3-ram Capping Stack had a different connecting configuration than the Mabile Cap; that BP cut off the "riser stub" that the Mabile Cap was designed to attach to in order to allow its 3-ram Capping Stack to attach to the blowout preventer instead; that BP identified a capping stack as a potential solution nearly two months before Mabile submitted his design; that BP had the technology available to build a capping stack prior to the blowout; and that a Peer Assist was held to evaluate capping options prior to Mabile's submission. *Id.* at 18–19. Likewise, BP cites a photograph of a "largely assembled" 3-ram Capping Stack that was allegedly taken on May 30, over two weeks before Mabile contends he provided the ideas that BP used to build its cap. *Id.* The photograph was an MDL trial exhibit referenced in an October 13, 2013 trial transcript, and does not appear to be cited in the MDL Phase II Findings designated by Mabile. *See* Rec. Doc. 17-9 (Transcript of Nonjury Trial Proceedings on Oct. 2, 2013) at 898–901; Rec. Doc. 17-29 (MDL Trial Ex. 143045) at 6.

[40] Rec. Doc. 30-1 at 14.

[41] 333 F.2d 672, 673–74 (5th Cir. 1964).

[42] *See, e.g.*, *Mitchell Novelty Co. v. United Mfg. Co.*, 199 F.2d 462 (7th Cir. 1952) (holding that the plaintiff failed to establish the prerequisite elements of novelty, confidentiality, and use for his unjust enrichment claim for alleged appropriation of his idea); *De Filippis v. Chrysler Corp.*, 159 F.2d 478 (2d Cir. 1947) (holding that the plaintiff cannot allege novelty or use of his idea when defendant was already manufacturing the product at the time of disclosure); *Smoley v. New Jersey Zinc Co.*, 106 F.2d 314, 315 (3d Cir. 1939) (finding the plaintiff failed to "sustain the burden upon him of proving that the idea was novel"); *Lueddecke v. Chevrolet Motor Co.*, 70 F.2d 345, 346 (8th Cir. 1934) (stating that the plaintiff's idea was not novel or useful, and that there was no agreement by defendant to pay for the plaintiff's alleged idea).

confidential relationship, and use of the idea by the defendant for his concept "to be entitled to protection as a property right."[43]

BP argues that Mabile fails to plausibly allege any of these essential elements. First, BP states that the amended complaint fails to allege that any of Mabile's disclosures were made in confidence or that BP offered to keep his idea confidential.[44] BP argues that Mabile could not impose a confidential relationship on BP "by his gratuitous and unilateral act" of voluntarily disclosing his idea to BP.[45] Second, BP argues that Mabile has not plausibly alleged that BP used any features of Mabile's invention.[46] In particular, BP asserts that though the amended complaint states there were two unique features of the "Mabile Cap" design—the "flange on top of a flange" feature and a valve designed to allow oil to be piped to the surface or to cement the well in[47]— Mabile has not plausibly alleged that BP used either.[48]

Finally, BP, citing the MDL Phase II Findings,[49] argues that Mabile has not plausibly alleged that his idea was novel.[50] In support of this contention, BP points to *McIntyre v. BP Exploration & Production, Inc.*, where another plaintiff alleged BP appropriated his well-capping

---

[43] *Official Airlines Schedule Info. Serv., Inc.*, 333 F.2d at 674.

[44] Rec. Doc. 30-1 at 14.

[45] *Id.* (quoting *Official Airlines Schedule Info. Serv., Inc.*, 333 F.2d at 674).

[46] *Id.* at 16.

[47] *Id.* at 17–18 (quoting Rec. Doc. 28 at 4).

[48] *Id.* In its reply brief, BP states that Mabile's "rudimentary" submission lacked any important details for which BP could have used to design the 3-ram Capping Stack. Rec. Doc. 38 at 11. For example, BP agrees with Mabile that both of their designs included the use of valves, but asserts that Mabile has not alleged any specific details "about these valves such as their type, size, material, operating limits, or other specifications" beyond vague allegations "regarding the general use of valves." Rec. Doc. 30-1 at 18. BP contends that such vague, generalized assumptions are insufficient to satisfy BP's proposed "use" element. *Id.*

[49] BP cites to the MDL Phase II Findings to argue that BP had already identified and begun constructing a capping stack as a potential solution prior to the submission of Mabile's design. *Id.* at 18–19.

[50] *Id.*

7

idea.[51] There, BP states that the district court found that the only similarity plaintiff's design had with BP's cap was the use of a "shutoff valve" that allowed oil to continue to flow, and held that the use of valves was not sufficiently novel to support plaintiff's claims.[52] Here, BP asserts Mabile's submission also "amounts to little more than the idea of attaching valves to the Macondo well to shut off the flow of hydrocarbons," and thus lacked novelty.[53]

### 3.    Alleged Deficiencies in Each of Mabile's Claims

Next, BP argues that Mabile's conversion, unfair trade practices, and unjust enrichment claims each suffer from particular deficiencies that require the Court to dismiss all three claims.

#### a.    Conversion

BP argues that, under Louisiana law, conversion only applies to goods and chattel, while Mabile's claim is based upon the alleged use of intangible, intellectual property.[54] According to BP, Louisiana state courts repeatedly define the tort of conversion in terms of goods and chattel.[55] BP represents that several federal district courts in Louisiana have held the same; for example, a court in the Middle District of Louisiana held that conversion "requires unlawful interference with *chattel*," while a court in the Western District of Louisiana has stated that Louisiana limits conversion claims of intangible property rights to those that "are traditionally merged into or

---

[51] *Id*. at 20 (citing No. 13-149, 2015 WL 999092 (D. Alaska Mar. 5, 2015).

[52] *Id.* (citing *McIntyre*, 2015 WL 999092 at *1, 3).

[53] Rec. Doc. 38 at 11.

[54] *Id*. at 21–23.

[55] *Id*. at 21 (citing *Tracer Prot. Servs., Inc. v. Burton*, No. 15-0215, 2015 WL 5515793, at *6 (La. Ct. App. 2015) (citing *Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 857 (La. 1998) (describing conversion as, *inter alia*, the "wrongful exercise or assumption of authority over another's *goods*" that is "committed when any of the following occurs: (1) possession is acquired in an unauthorized manner; (2) the *chattel* is removed from one place to another with the intent to exercise control over it; (3) possession of the *chattel* is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the *chattel* is altered or destroyed; (6) the *chattel* is used improperly; or (7) ownership is asserted over the *chattel*." (emphasis added))).

identified with some document," such as "stock certificates and bonds."[56] Therefore, BP argues

that intangible property may only be subject to conversion in Louisiana when there is "unlawful

interference with some physical document or other tangible property."[57] In support of this

argument, BP cites *Dorsey v. Money Mack Music, Inc.*, where another section of the Eastern

District of Louisiana, considering whether a conversion claim was preempted by the Copyright

Act, stated that "the torts of conversion and trespass relate to interference with tangible rather than

intangible property."[58]

Here, BP argues that Mabile has premised his conversion claim on BP's alleged use of

Mabile's intellectual property and not on the use of any tangible goods or chattel.[59] BP points to

the conversion section of Mabile's amended complaint, which argues that BP interfered with

Mabile's "intellectual property," "design," and "property rights in his invention."[60] BP represents

that the only physical property mentioned by Mabile was the copy of the schematic and a DVD of

the demonstration that Mabile allegedly gave to a Coast Guard engineer; however, BP argues that

this Court does not have to, nor should it, accept Mabile's "unsupported legal conclusions" that

the Coast Guard engineer was an agent of BP.[61] Moreover, BP states that Mabile voluntarily turned

---

[56] *Id.* (citing *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, No. 11-00556, 2014 WL 6674034, at *6 (M.D. La. Nov. 24, 2014) (emphasis in original); *BASF Agrochemical Prods. v. Unkel*, No. 05-1478, 2006 WL 3533133, at *7 (W.D. La. Dec. 7, 2006)).

[57] *Id.*

[58] 304 F. Supp. 2d 858, 866 (E.D. La. 2003) (Duval, J.) (quoting 1 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 1.01(B)(1), at 1–41 (2000)).

[59] Rec. Doc. 30-1 at 22.

[60] *Id.* at 22 (citing Rec. Doc. 28 at 7). However, the same section of Plaintiff's Amended Complaint also uses the term "schematic." Rec. Doc. 28 at 7.

[61] Rec. Doc. 30-1 at 22. (citing *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005))); *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (for purposes of a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." (quoting *Bell Atl. Corp. v.*

over his schematic without ever requesting its return.[62]

BP also distinguishes Mabile's case from the two Eastern District of Louisiana cases he cites, contending that both cases involved conversion of physical objects or documents and are thus not applicable here.[63] BP argues that in *Joe Hand Promotions, Inc. v. Ashby*, the district judge held that interference with a satellite signal could form the basis for a conversion claim, but based its reasoning on the court's conclusion that a satellite signal is "not an abstraction" but rather "a physical thing, composed of matter, with physical properties."[64] Likewise, in *Endotech USA v. Biocompatibles International PLC*, another district judge denied a motion to dismiss for a conversion claim premised on the use and distribution of *physical documents* containing the plaintiff's business plan.[65] According to BP, Mabile's conversion claim here "is not based on the distribution of his physical schematics," which BP states Mabile has not plausibly alleged that BP ever received, but rather BP's alleged use of his abstract, intangible idea.[66] Neither case, BP argues, suggests incorporeal intellectual property or an abstract concept can be converted.[67]

### b.    *Unfair Trade Practices*

Next, BP cites two cases, one in the Eastern District of Louisiana and one in the Middle

---

*Twombly*, 550 U.S. 544, 555 (2007))).

[62] *Id.* (citing *Davis v. Am. Marine Corp.*, 163 So. 2d 163, 167-68 (La. Ct. App. 1964) (when property is voluntarily given to another, there can be no claim for conversion unless the recipient provides "an absolute, unqualified refusal to deliver")).

[63] *Id.*

[64] *Id.* (citing *Joe Hand Promotions, Inc. v. Ashby*, No. 13-4747, 2014 WL 1652511, at *4 (E.D. La. Apr. 24, 2014) (Vance, J.)).

[65] *Id.* (citing *Endotech USA v. Biocompatibles International PLC*, No. 00-0957, 2000 WL 1594086, at *10 (E.D. La. Oct. 24, 2000) (Duval, J.)).

[66] *Id.*

[67] *Id.* at 23.

District of Louisiana, where courts have held that when a plaintiff's claim under LUTPA is based on a defendant's alleged "fraudulent misrepresentation," it must meet the heightened pleading requirements of Rule 9(b).[68] BP asserts that because Mabile's unfair trade practices claim under LUTPA is premised on alleged "misrepresentations" by BP, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) applies.[69]

BP represents that, in the Fifth Circuit, Rule 9(b) is interpreted "strictly."[70] Here, BP argues that Mabile failed to meet this heightened pleading statement standard.[71] BP represents that Mabile only states that "BP and/or its agents" made "misrepresentations," but does not specifically identify who made those misrepresentations, what the content was, why the statements were "false or deceptive," and when and where the misrepresentations occurred.[72]

Additionally, BP contends that Mabile's unfair trade practices claim relies on "factually unsupported legal conclusions that fail to satisfy the plausibility standard set forth in *Twombly* and *Iqbal*."[73] BP refutes Mabile's suggestion that the "abundance" of other, similar "use-of-idea" lawsuits against BP demonstrates that "the individuals who submitted ideas to BP's Website

---

[68] *Id.* at 24 (citing *Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 721 (E.D. La. 2009) ("Because plaintiff's LUTPA claim is based on defendants' allegedly fraudulent misrepresentation, plaintiff's LUTPA claim must meet the heightened pleading requirements of Rule 9(b)."); *Brand Coupon Network, LLC v. Catalina Marketing Corp.*, 2014 WL 6674034, at *5 ("Where a plaintiff's LUTPA claim is based on alleged fraudulent misrepresentation, the LUTPA claim must meet the heightened pleading requirements of Rule 9(b).")).

[69] *Id.*

[70] *Id.* (quoting *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009)).

[71] *Id.*

[72] *Id.* at 25.

[73] *Id.* For example, BP states that Mabile's contention that, "[a]s shown by BP's refusal to properly compensate Mr. Mabile for his design, BP's Website was used by BP to extract the information and knowledge it desperately needed" is an unsupported legal conclusion that the Court should not be accepted as true. *Id.* (quoting Rec. Doc. 28 at 8).

justifiably believed they would receive compensation for any submission used."[74] BP asserts that

no such inference can be drawn from the mere fact that a lawsuit was filed, and BP represents that

every such lawsuit of which BP is aware "has been voluntarily dismissed, dismissed on the

pleadings, or dismissed on the summary judgment stage."[75] Thus, BP argues that Mabile's unfair

trade practices claim fails to satisfy both Rule 9(b)'s heightened pleading requirements and a

plaintiff's typical requirement to plausibly allege his claims.[76]

### c.      *Unjust Enrichment*

Finally, BP argues that Mabile's unjust enrichment claim fails because it is only available

when there is no alternative remedy available at law.[77] According to BP, Louisiana Civil Code

article 2298 states that unjust enrichment "shall not be available if the law provides another remedy

for the impoverishment or declares a contrary rule."[78] BP further points to *Walters v. MedSouth*

*Record Mgmt., LLC*, a Supreme Court of Louisiana case, which held that "the remedy of unjust

enrichment is subsidiary in nature, and shall not be available if the law provides another remedy.

The unjust enrichment remedy is only applicable to fill a gap in the law where no express remedy

is provided."[79] BP argues that *Walters* makes it clear that the inquiry is not whether the plaintiff

---

[74] *Id*. (quoting Rec. Doc. 28 at 8).

[75] *Id*. (citing *Erikson v. BP Expl. & Prod. Inc.*, 567 F. App'x 637 (10th Cir. 2014); *Richards v. BP Expl. & Prod., Inc.*, 533 F. App'x 378 (5th Cir. 2013); *Vann v. British Petroleum Oil Co.*, 451 F. App'x 404 (5th Cir. 2011); *Lacy v. BP, plc*, No. 11-21855, 2015 WL 3952593 (S.D. Fla. June 29, 2015); *McIntyre v. BP Expl. & Prod., Inc.*, No. 13-149, 2015 WL 999092 (D. Alaska Mar. 5, 2015); *Laing v. BP Expl. & Prod. Inc.*, No. 13-1041, 2014 WL 272846 (M.D. Fla. Jan. 23, 2014); *Kaminski v. BP Expl. & Prod., Inc.*, 975 F. Supp. 2d 1220 (M.D. Fla. 2013); *Throckmorton v. BP Am., Inc.*, No. 13-43, 2013 WL 1187017 (E.D. Ky. Mar. 20, 2013); *Cutler v. BP*, MDL No. 2179, 2012 WL 4753418 (E.D. La. Oct. 4, 2012); *Holland v. BP Am., Inc.*, No. 11-0580, 2012 WL 761980 (E.D. Cal. Mar. 7, 2012); *Ramani v. BP. N. Am. Inc.*, Case No. 1:11-cv-05953 (E.D.N.Y. 2011)).

[76] *Id*. at 25–26.

[77] *Id*.

[78] Rec. Doc. 30-1 at 26.

[79] *Id*. (quoting *Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 243, 244 (La. 2010) (internal citations

can actually prevail on an alternative claim, but rather if no other legal framework governs the alleged conduct.[80]

Here, BP argues that there is no "gap in the law" that would permit Mabile to bring an unjust enrichment claim.[81] BP offers two other potential remedies for the alleged impoverishment that precludes Mabile from bringing an unjust enrichment claim: the Louisiana Uniform Trade Secrets Act ("UTSA") and LUTPA.[82] In *McPhearson v. Shell Oil Co.*, BP asserts that the Louisiana Fourth Circuit Court of Appeal held that UTSA precluded an unjust enrichment claim premised on the defendant's use of plaintiff's non-confidential design, "even though the plaintiff did not assert a claim for trade secret misappropriation or maintain his idea as confidential."[83] BP argues that Mabile could have sought the protections offered by UTSA, and thus his unjust enrichment claim is precluded.[84]

BP also alleges that Mabile's unjust enrichment claim is precluded by his LUTPA claim.[85] In support of this contention, BP alleges that Mabile uses the same theory for both his unjust enrichment and LUTPA claims; for example, BP represents that Mabile's unjust enrichment claim argues that BP made "deceitful solicitations" through its website, leading to the uncompensated

---

and quotation marks omitted)).

[80] *Id. See also Zaveri v. Condor Petroleum Corp.*, 27 F. Supp. 3d 695, 701–02 (W.D. La. 2014) ("As correctly held by Judge Feldman of the Eastern District, under Louisiana law, an unjust enrichment claim is a 'subsidiary' claim, not an alternative claim, which cannot be pursued when Louisiana law affords any other legal remedy.") (citing *JP Mack Indus. LLC v. Mosaic Fertilizer, LLC*, 970 F. Supp. 2d 516, 521 (E.D. La. 2013)); *Constance v. Austral Oil Expl., Co.*, Nos. 12-1252 & 12-1253, 2013 WL 6578178, at *9 (W.D. La. Dec. 13, 2013) ("Unjust enrichment is a specific cause of action that may not be asserted against a defendant as a mere catchall or safety net in the event that a plaintiff fails to succeed on the merits of his or her other claims.").

[81] *Id.* at 27.

[82] *Id.*

[83] *Id.* (citing *McPhearson v. Shell Oil Co.*, 584 So. 2d 373, 376 (La. App. 4 Cir. 1991)).

[84] *Id.*

[85] *Id.*

and unauthorized use of his invention, while Mabile's LUTPA claim alleges BP was "deceptive" through its website resulting in "uncompensated use" of his invention.[86] According to BP, it does not matter if Mabile has failed to adequately allege sufficient facts to support his unfair trade practices claim under LUTPA; all that matters is that there are remedies available at law for these types of allegations.[87]

Even if this Court finds that Mabile can assert an unjust enrichment claim, BP argues that it still fails because Mabile has not plausibly alleged that BP was "enriched without cause" from Mabile's invention.[88] Relying on a number of non-Louisiana cases, BP states that, for an unjust enrichment claim premised on the use of an idea, the idea must be "sufficiently developed to be ready for immediate use without additional embellishment."[89] Here, BP argues that Mabile's alleged idea lacked the "specifications, dimensions, materials, operating limits, or other engineering details" necessary for immediate use.[90] Therefore, Mabile has not plausibly alleged

---

[86] *Id.* (citing Rec. Doc. 28 at 8–10).

[87] *Id.* at 28.

[88] *Id.*

[89] *Id.* (citing *McIntyre v. BP Expl. & Prod., Inc.*, No. 3:13-CV-149 RRB, 2015 WL 999092, at *2 (D. Alaska Mar. 5, 2015) (holding that the plaintiff's well capping idea lacked "any specifications, dimensions, materials, operating limits, or other critical engineering detail essential to implementation" and thus was not "sufficiently developed to be ready for immediate use" (internal quotations omitted)); *Kaminski v. BP Expl. & Prod. Inc.*, 975 F. Supp. 2d 1220, 1238 (M.D. Fla. 2013); *Smith v. Recrion Corp.*, 541 P.2d 663, 665 (Nev. 1975) (affirming summary judgment for defendant because the idea on which the plaintiff's claims was based "was hardly capable of 'immediate use without any additional embellishment'"); *Tate v. Scanlan Int'l, Inc.*, 403 N.W.2d 666, 672 (Minn. Ct. App. 1987) ("An idea is a protectable property interest, if it is sufficiently developed to be ready for immediate use without additional embellishment. If an idea requires extensive investigation, research, and planning before it is ripe for implementation, it is not concrete."); *Matarese v. Moore-McCormack Lines, Inc.*, 158 F.2d 631, 634 (2d Cir. 1946) ("Courts have justly been assiduous in defeating attempts to delve into the pockets of business firms through spurious claims for compensation for the use of ideas. Thus to be rejected are attempts made by telephoning or writing vague general ideas to business corporations and then seizing upon some later general similarity between their products and the notions propounded as a basis for damages.")).

[90] Rec. Doc. 30-1 at 29.

14

that his idea enriched BP, and his unjust enrichment claims should therefore be dismissed.[91]

### 4.    Federal Preemption of State Law Claims

Finally, BP contends that all three of Mabile's claims are preempted by federal patent law because they are all premised upon BP's alleged use of Mabile's non-confidential invention.[92] BP asserts that it is well-established that "[f]ederal law preempts state law that offers patent-like protection to discoveries unprotected under federal patent law."[93] BP represents that the United States Supreme Court, in *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, found that "[a] state law that substantially interferes with the enjoyment of an unpatented utilitarian or design conception which has been freely disclosed by its author to the public at large impermissibly contravenes the ultimate goal of public disclosure and use which is the centerpiece of federal patent policy."[94] Likewise, in *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, the Federal Circuit held that "[a]bsent secrecy, state law cannot create a collateral set of rights available as an adjunct or expansion to patent rights."[95]

Generally, BP assert that because Mabile's invention was publicly known and not patented, his state law claims alleging BP used his idea without compensation "encroach impermissibly on the exclusive domain of federal patent law."[96] According to BP, Mabile did not allege that he kept his idea secret or confidential, but rather admitted that he held demonstrations of his invention for

---

[91] *Id.*

[92] *Id.* at 10–14.

[93] *Id.* (citing 411 F.3d 1369, 1377–78 (Fed. Cir. 2005)).

[94] *Id.* (quoting 489 U.S. 141, 156–57 (1989)).

[95] *Id.* at 10–11 (citing *Ultra-Precision Mfg., Ltd.*, 411 F.3d at 1379 (quoting *Waner v. Ford Motor Co.*, 331 F.3d 851, 856 (Fed. Cir. 2003))).

[96] *Id.*

a number of individuals, including several BP employees and a member of the United States Coast Guard.[97] BP asserts that an idea is considered publicly available, and thus unprotected by federal patent law, if it is "given to a member of the public without restriction."[98]

More specifically, BP contends that Mabile's conversion claim is premised upon BP's alleged unauthorized use of his "Mabile Cap" idea, and thus it is preempted by federal patent law.[99] BP asserts that in *BASF Agrochemical Products v. Unkel*, a court in the Western District of Louisiana held that the tort of conversion under Louisiana law is preempted by federal patent law when it is based upon an alleged unauthorized use of an invention.[100] BP also cites *Spear Marketing, Inc. v. BancorpSouth Bank*, a Fifth Circuit case, which BP states also stands for the proposition that claims for conversion of intangible property are preempted.[101]

BP further asserts that Mabile's unfair trade practices claim under LUTPA and his unjust enrichment claim, both of which are also premised on BP's alleged use of Mabile's idea, are preempted for the same reason as his conversion claim.[102] BP avers that Mabile's LUTPA claim is preempted particularly in light of the fact that he does not limit the damages he seeks to only the incremental benefit over and above the benefit the public received from the disclosure of his idea.[103] In support of this argument, BP represents that in *Powell v. Home Depot U.S.A., Inc.*, a

---

[97] *Id.* at 11 (citing Rec. Doc. 1-2 at 3; Rec. Doc. 28 at 5). BP also cites to Mabile's original complaint, which allegedly stated that the mayor of Grand Isle was also in attendance. *Id* (citing Rec. Doc. 1-2 at 3).

[98] *Id.* (citing *Pronova Biopharma Norge AS v. Teva Pharm. USA, Inc.*, 549 F. App'x 934, 940 (Fed. Cir. 2013)).

[99] *Id.*

[100] *Id.* at 12 (citing No. 05-478, 2006 WL 3533133, at *7 (W.D. La. Dec. 7, 2006)).

[101] *Id.* (citing 791 F.3d 586, 597–98 (5th Cir. 2015)).

[102] *Id.*

[103] *Id.* at 13 (citing *Ultra-Precision*, 411 F. 3d at 1379–80).

federal district court in Florida held that a plaintiff's claim under Florida's Deceptive and Unfair Trade Practices Act was preempted by federal patent law because it was not limited to such "incremental profits."[104] With regards to Mabile's unjust enrichment claim, BP again cites *Ultra-Precision Manufacturing, Ltd.*, a Federal Circuit case in which, BP asserts, the court held that the plaintiff's unjust enrichment claim was preempted because the idea was not kept confidential and was "free for all of the world to enjoy."[105]

### B.    *Mabile's Arguments in Opposition of Dismissal*

Mabile opposes BP's motion to dismiss for failure to state a claim, and argues, in sum, that the Court should not take judicial notice of the MDL Phase II Findings, that all three of his claims are plausibly alleged, and that none of his claims are preempted by federal patent law.[106]

### 1.    Judicial Notice of the MDL Phase II Findings

Mabile opposes BP's use of documents outside the amended complaint in its motion to dismiss, arguing that it is "wholly inappropriate at this premature stage."[107] Mabile asserts that, on a Rule 12(b)(6) motion to dismiss, a court may not go outside the complaint beyond the limited exception of attached documents.[108] Mabile argues that, even though the MDL Phase II findings were designated as part of the record in this matter, reference to them may only be made during a motion for summary judgment.[109]

Even if a summary judgment motion was currently before the Court, Mabile argues, the

---

[104] No. 07-80435, 2010 WL 375796, at *5 (S.D. Fla. Jan. 26, 2010).

[105] Rec. Doc. 30-1 at 13–14 (citing *Ultra-Precision*, 411 F. 3d at 1380–82).

[106] Rec. Doc. 31.

[107] *Id.* at 17.

[108] *Id.* at 17–18.

[109] *Id.*

Court does not have enough information yet to analyze the overlap between his "Mabile Cap" and BP's 3-ram Capping Stack.[110] Mabile asserts that this case requires a detailed comparison of the two designs and involves complicated engineering, expert, and fact issues that BP cannot plausibly expect the Court to consider on a motion to dismiss this early in the litigation.[111]

Second, Mabile also opposes the consideration of BP's "Figure 1: Annotated Exhibit 1 of the Amended Complaint, Rec. Doc. 28-1" submitted in BP's memorandum in support of its motion to dismiss.[112] In BP's memorandum, BP submitted its own version of Mabile's exhibit by drawing dotted lines and inserting a label on the schematic Mabile attached to his amended complaint.[113] Mabile argues that BP has improperly tried to submit its own exhibit on a motion to dismiss, and thus BP's "Figure 1" should not be considered.[114]

### 2.  Essential Elements of "Use-of-Idea" Claims

Mabile also opposes BP's argument that he was required to allege the "essential elements" of confidentiality, use, and novelty to survive a motion to dismiss on his three claims.[115] Mabile states that BP's prerequisite elements are rooted in "antiquated" case law and are not based on Louisiana law.[116] Moreover, Mabile argues that the District Court of Alaska's holding in *McIntyre*,

---

[110] *Id.*

[111] *Id.* Additionally, Mabile argues that even if the Court took judicial notice of the MDL Phase II Findings, it would not be fatal to his claims, as all it shows is that BP had the ability to create a successful capping device, but failed to do so until after Mabile submitted his designs. *Id.* Mabile asserts that BP has not alleged anything that forecloses the fact that the specific successful design used to stop the oil spill was in fact created by Mabile.

[112] *Id.* (citing Rec. Doc. 30-1 at 11).

[113] Rec. Doc. 30-1 at 11. The annotated exhibit purportedly points out that Mabile's device was intended to attach to a riser stub on the ocean floor that BP cut off before installing its 3-ram Capping Stack. *Id.*

[114] Rec. Doc. 31 at 18.

[115] *Id.* at 18–20.

[116] *Id.* at 19.

which considered the three elements asserted by BP when granting a motion to dismissed, was premised on materially different circumstances than the case at hand.[117] Mabile argues that in *McIntyre*, the plaintiff's submission to BP lacked any essential details, and the plaintiff had admitted that there were "outright differences" between his proposal and BP's ultimate solution.[118] Here, Mabile asserts his schematic contained much more detail, including describing and specifying the types of valves used and the application of seals, vacuum lines, studs, clips, and flanges.[119] Moreover, in response to BP's citations to other cases involving similar plaintiffs, Mabile argues that the fact that other claimants have alleged unsuccessful use of idea claims against BP or settled "says nothing" about Mabile's claims.[120]

### 3.   Alleged Deficiencies in Each of Mabile's Claims

#### a.   *Conversion*

Mabile next contends that BP's unauthorized interference with his property "falls squarely within Louisiana's cause of action for conversion."[121] Mabile asserts that Louisiana courts have defined conversion as "an act in derogation of the plaintiff's possessory rights"[122] that occurs "when a party does not have permission to use the property of another."[123] Like BP, Mabile cites the Louisiana Supreme Court case *Dual Drilling*, but reads it differently as allowing conversion

---

[117] *Id.*

[118] *Id.* (quoting *McIntyre*, 2015 WL 999092, at *2).

[119] *Id.*

[120] *Id.* at 19–20.

[121] Rec. Doc. 31 at 9.

[122] *Id.* (quoting *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 760 (La. 1985)).

[123] *Id.* (quoting *Glod v. Baker*, 998 So. 2d 308, 316 (La. App. 3d Cir. 2008)).

claims for general property rights.[124] Accordingly, Mabile states that BP's argument that conversion only applies to "chattels," defined as "corporeal movable," is erroneous, arguing that the courts who have arrived at that conclusion had relied on common law sources rather than Louisiana state law and its civil law tradition.[125] For example, Mabile argues that the court in *BASF Agrochemical Products v. Unkel* defined chattel using Black's Law Dictionary, and not on any Louisiana state laws or court cases,[126] while the court in *Dorsey v. Money Mack Music, Inc.* looked to *Nimmer on Copyright*, a common law work, to define conversion.[127] Mabile argues that the Fifth Circuit has disapproved of holdings grounded in dictionary definitions rather than Louisiana law,[128] and the Louisiana Supreme Court rejects the common law version of conversion.[129]

Mabile argues instead that conversion under Louisiana law can apply to incorporeal movables.[130] In *Joe Hand Productions*, for example, Mabile asserts that another district judge in the Eastern District of Louisiana "relied heavily on the Louisiana Civil Code" and held that a conversion claim could be stated for the interception of incorporeal movables such as satellite signals.[131] Likewise, Mabile argues that in *Endotech*, another district judge in the Eastern District

---

[124] *Id*. at 9–10 (citing *Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 857 (La. 1998)).

[125] *Id*. (citing *BASF Agrochemical Products v. Unkel*, No. 11-00556, 2014 WL 6674034, at *6 (M.D. La. Nov. 24, 2014); *Dorsey v. Money Mack Music, Inc.*, 304 F. Supp. 2d 858, 866 (E.D. La. 2003) (quoting 1 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT§ 1.01(B)(1), at 1-41 (2000))).

[126] *Id*. (citing *BASF Agrochemical Products v. Unkel*, No. 11-00556, 2014 WL 6674034, at *6 (M.D. La. Nov. 24, 2014)).

[127] *Id*. (citing *Dorsey v. Money Mack Music, Inc.*, 304 F. Supp. 2d 858, 866 (E.D. La. 2003) (quoting 1 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT§ 1.01(B)(1), at 1-41 (2000))).

[128] *Id*. at 13 (citing *Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 663 (5th Cir. 2005) (declining to follow a Louisiana state court opinion that based its holding on a Webster's Dictionary definition and "considered neither the Louisiana Supreme Court[] . . . nor any provision of the Louisiana Civil Code in reaching [its] conclusion")).

[129] *Id.* at 9–10 (citing *Dual Drilling*, 721 So. 2d at 856).

[130] *Id*. at 10.

[131] Rec. Doc. 31 at 10 (citing *Joe Hand Productions, Inc. v. Ashby*, No. 13-4747, 2014 WL 1330027, at *4

of Louisiana rejected the defendant's claim that the case must be dismissed because "one cannot convert intangible property," and instead determined that the unauthorized use and distribution of documents explaining the plaintiff's suggested business plan for the defendant constituted conversion.[132] Mabile argues that *Endotech* is particularly persuasive here because, in that case, the defendant converted plaintiff's property by using the information contained within a physical document, *i.e.* the business plan.[133] Similarly, here, Mabile alleges that BP converted his property by using information contained within a physical document, *i.e.* his schematic.[134] Mabile represents that BP acquired possession of his schematic when he submitted it to BP's website and to BP's alleged agent in the United States Coast Guard, Kurt Hansen.[135] Thus, Mabile contends that, because conversion applies to both corporeal and incorporeal movables under Louisiana law, BP's unauthorized use and possession of Mabile's schematic constitutes conversion.[136]

### b.    Unfair Trade Practices

Mable next argues that he has plausibly stated a claim under LUTPA as well.[137] According to Mabile, LUTPA declares that all "[u]nfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful, a purposefully broad prohibition.[138] Mabile represents that in

---

(E.D. La. Apr. 2, 2014) (Vance, J.) (holding that intercepting a satellite signal without authorization constituted conversion under Louisiana law), *vacated on other grounds*, 2014 WL 1652511 (E.D. La. Apr. 24, 2014)).

[132] *Id*. at 11 (citing *Endotech USA v. Biocompatibles International PLC*, No. CIV.A. 00-0957, 2000 WL 1594086 (E.D. La. Oct. 24, 2000) (Duval, J.)).

[133] *Id*. at 11–12.

[134] *Id*. at 12.

[135] *Id*. at 10.

[136] *Id*.

[137] Rec. Doc. 31 at 6.

[138] *Id.* (citing La. Rev. Stat. § 51:1405(A)).

*Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, the Louisiana Supreme Court held that recovery under LUTPA is available to anyone who has suffered due to an unfair or deceptive method, act, or practice.[139] Mabile asserts than an "unfair" act is one that offends public policy, and is "immoral, unethical, oppressive, unscrupulous, or substantially injurious."[140] Likewise, an act is "deceptive" under LUTPA "when it amounts to fraud, deceit, misrepresentation, or other unethical conduct."[141] Here, Mabile asserts BP committed a "series of unjust acts" by setting up a website to solicit ideas and soliciting Mabile's ideas in person in order to acquire and use his schematic and design while failing to compensate or acknowledge him.[142] Mabile asserts this conduct is "the type of deceptive and unfair acts condemned by LUTPA."[143]

Furthermore, Mabile argues that his LUTPA claim does not need to meet the heightened pleading requirements of Rule 9(b).[144] He asserts that LUTPA claims are different than fraud claims that must be pleaded with particularity.[145] Mabile argues that LUTPA includes all types of unfair and unethical conduct, not just fraud, and that the Fifth Circuit has stated that "LUTPA does not require an intent to obtain an advantage or to cause a loss," [146] which Mabile argues is an essential element of fraud.[147] Instead, the Fifth Circuit stated that LUPTA "merely requires a

---

[139] *Id.* (citing *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1057–58 (La. 2010)).

[140] *Id.*

[141] *Id.*

[142] *Id.* at 7.

[143] *Id.*

[144] *Id.*

[145] *Id.*

[146] *Id.* (quoting *Industrias Magromer Cueros y Pieles S.A. v. La. Bayou Furs Inc.*, 293 F.3d 912, 922 (5th Cir. 2002)).

[147] For this proposition, Plaintiff cites La. Civ. Code art. 1953: "Fraud is a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or

showing of some element of fraud, misrepresentation, deception, *or* other unethical conduct."[148] Mabile argues that the two LUTPA cases cited by BP both involved allegations of *fraudulent* misrepresentation, which Mabile has not alleged here.[149] Mabile also points to this Court's holding in *Andretti* and another court's holding in *Brand Coupon Network*, neither of which applied Rule 9(b) to LUTPA claims not based on fraud.[150] Here, Mabile states that he does not assert that BP committed fraud or made a fraudulent representation, but rather that BP's actions were deceptive, unethical, immoral, and offended the public policy of Louisiana.[151] Therefore, he has pleaded a cognizable claim under § 51:1409(A) of LUTPA.[152] In a footnote, Mabile also states that, even if Rule 9(b) does apply, his amended complaint meets the pleading requirements.[153]

### c.   *Unjust Enrichment*

Finally, Mabile responds that, "[i]n the event this Court finds that [he] has no other remedy at law," then he has also plausibly alleged an "alternatively-pleaded" claim for unjust enrichment.[154] Mabile cites three Eastern District of Louisiana cases where the courts allowed the

---

inconvenience to the other." *Id.*

[148] *Id.* (quoting *Andretti Sports Mktg. La., LLC v. Nola Motorsports Host Comm., Inc.*, CIV. ACTION NO. 15-2167, 2015 WL 7459697, at *18 (E.D. La. Nov. 24, 2015) (quoting *La. Bayou Furs*, 298 F.3d at 922) (emphasis added)).

[149] *Id.* at 8.

[150] *Id. See Andretti*, 2015 WL 7459697, at *17–*23, *28 (applying Rule 9(b) standard to fraud claim, but not applying the standard to the plaintiff's LUTPA claim); *Brand Coupon Network*, 2014 WL 6674034, at *5–*9 (applying Rule 9(b) standard to LUTPA claim based on conspiracy to defraud, but not applying the same standard to LUTPA claim based on the passing off of products).

[151] Rec. Doc. 31 at 8.

[152] *Id.*

[153] *Id.* at 8 n.43.

[154] *Id.* at 13, 15. A plaintiff must plead the following elements to state a cause of action for unjust enrichment: "(1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and the resulting impoverishment; (4) there must be an absence of 'justification' or 'cause' for the enrichment and impoverishment; and (5) there must be no other remedy at law available to plaintiff." *Carriere v. Bank*

23

plaintiff to bring a claim for unjust enrichment in the alternative.[155] For example, in *Orx Resources, Inc. v. Autra*, Mabile states that the district judge held that "the federal rules permit a claim for unjust enrichment to be pled in the alternative."[156] Therefore, because Mabile argues that he has plausibly alleged the first four elements of unjust enrichment,[157] Mabile requests that his claim not be dismissed unless the Court or the jury finds that another remedy is expressly available to him.[158] Mabile further argues that, contrary to BP's assertion, he has never been able to assert a claim under UTSA that would preclude his unjust enrichment action, because he has never had a trade secret such that a remedy under UTSA would have been available.[159]

### 4.    Federal Preemption of Mabile's State Law Claims

Finally, Mabile asserts that none of his claims are preempted by federal patent law. Mabile argues that the Supremacy Clause of the United States Constitution only renders state law without effect if it conflicts with federal law.[160] Mabile contends that conflict preemption occurs when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[161] He avers that the Court must analyze the relationship between the state

---

*of Louisiana*, 702 So.2d 648 (La. Dec. 13, 1996). *See Orx Res., Inc.*, 2009 WL 3447256 at *2..

[155] Rec. Doc. 31 at 15 (citing *Orx Resources, Inc. v. Autra*, No. 09-445, 2009 WL 3447256, at *2 (E.D. La. Oct. 20, 2009) (Africk, J.); *Mayer v. Lamarque Ford, Inc.*, No. CIV.A. 00-1325, 2001 WL 175232, at *2 (E.D. La. Feb. 16, 2001)(Clement, J.); *Endotech USA v. Biocompatibles International PLC*, No. CIV.A. 00-0957, 2000 WL 1594086, at *14 (E.D. La. Oct. 24, 2000) (Duval, J.)).

[156] 2009 WL 3447256, at *2.

[157] Rec. Doc. 31 at 14. In particular, Mabile states that BP was enriched when it used Mabile's schematic to stop the oil spill, that BP's failure to compensate Mabile for his idea resulted in his impoverishment, that the enrichment and impoverishment were connected, and that this uncompensated use was not allowed for by law or judicial act. *Id.*

[158] *Id.* at 15–16.

[159] *Id.* at 16.

[160] *Id.* at 20.

[161] *Id.* (citing *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979)).

law claim and patent law, including the conduct that forms the basis of the claim and the remedy sought.[162] Mabile asserts that whether a state law is preempted is "an ad hoc inquiry that depends heavily on the circumstances of the case."[163]

Mabile asserts that the cases cited by BP do not support their contention that conversion of intangible property claims are preempted.[164] Mabile contends that his conversion claim is not preempted by federal patent law because requiring BP to compensate him provides an incentive to invent, encourages investors to disclose their information to the public, and such a reward does not hinder BP or the public's use of the Mabile Cap.[165]

Mabile asserts that his LUTPA claim is also not preempted because courts have generally found that patent law will not preempt state law claims if they include additional elements not found in a patent law cause of action.[166] Furthermore, Mabile argues that his LUTPA claim is based on more than just BP's use of his design, and also includes the means that BP used to acquire the schematic and the failure to compensate him for it.[167] Because his claim is for conduct above and beyond the use of his schematic and design, Mabile asserts that his damages award need not be limited to an incremental benefit.[168] He contends that the LUTPA claim does not obstruct the

---

[162] *Id.* at 20–21 (citing *Lyden v. Nike, Inc.*, No. 13-662, 2014 WL 2563401, at *2 (D. Or. June 6, 2014); *Powell v. Home Depot U.S.A.*, 2010 WL 375796, at *3 (S.D. Fla. Jan. 26, 2010)).

[163] *Id.* at 21.

[164] *Id.*

[165] *Id.*

[166] *Id.* at 22 (citing *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1306 (Fed. Cir. 1999)).

[167] *Id.*

[168] *Id.* at 23. Mabile also cites *Rodime PLC v. Seagate Technology, Inc.*, where the Federal Circuit stated that patent laws do not preempt state law claims if the state law claim includes additional elements not found in the federal law cause of action, and if they are not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law. Rec. Doc. 42 at 2 (citing 174 F.3d 1294, 1306 (Fed. Cir. 1999)).

objectives of patent law and will not affect the information available to the public, but rather it will deter those in the future from using the unlawful means employed by BP.[169] Mabile also cites a Western District of Louisiana case, *Total Rebuild, Inc. v. Streamline Hose and Fittings, Inc.*, where, he asserts, the court rejected the defendant's argument that the plaintiff's LUTPA claim was preempted, stating that "Louisiana courts have denied attempts to apply federal patent law preemption to LUTPA claims."[170]

With regards to his unjust enrichment claim, Mabile contends that he does not seek patent-like remedies and patent laws do not preempt a plaintiff's right to recover under theories sounding in contract or tort for misappropriation of property protected under state law.[171] In support, Mabile cites a Third Circuit case, *Wawrynski v. H.J. Heinz Co.*, where he asserts that the court reversed the district court's dismissal of the plaintiff's unjust enrichment claim on preemption grounds because the plaintiff was not seeking to recover for patent infringement, but rather requested damages for defendant's failure to pay him for their use of his concepts and ideas.[172] Mabile also points to *University of Colorado Foundation, Inc. v. American Cyanamid Co.*, where the Federal Circuit found that, if the state law does not offer patent-like protection to intellectual creations which would otherwise remain unprotected as a matter of federal law, the application of an unjust enrichment claim does not impermissibly interfere with the federal patent scheme.[173]

---

[169] Rec. Doc. 31 at 23.

[170] *Id.* (citing No. 6:15-01172, 2015 WL 9217451 (W.D. La. Sept. 25, 2015)).

[171] *Id.* at 23–24.

[172] *Id.* at 24 (citing 574 F. App'x 99, 102 (3d Cir. 2014)).

[173] *Id.* at 4 (citing 342 F.3d 1298, 1306 (Fed. Cir. 2003)).

### C.      *BP's Reply to Mabile's Opposition*

### 1.      **Federal Preemption of Mabile's State Law Claims**

First, BP argues that the Supreme Court has made clear that "[a] state law that substantially interferes with the enjoyment of an unpatented utilitarian or design conception which has been freely disclosed by its author to the public" is preempted.[174] Here, BP claims that all three of Mabile's claims are "premised upon BP's alleged use or 'enjoyment of' his idea," and that Mabile "does not dispute that his idea was freely disclosed to the public and not confidential."[175] Thus, it is precisely the type of conduct that is exclusively governed by patent law.[176] BP asserts that even if it had used Mabile's idea, it would have been permissible because "the federal patent laws *do* create a federal right to 'copy and to use' . . . potentially patentable ideas which are fully exposed to the public."[177] Moreover, BP asserts that patent law has "stringent requirements and procedures that an inventor must satisfy in order to secure a property right in his or her invention."[178] BP argues that if the Court finds that Mabile may assert a conversion claim here, it would mean that "a would-be inventor need not satisfy any of the rigorous standards of patentability to secure a perpetual patent-like royalty under state law based on the use of an unpatented idea."[179]

In response to Mabile's argument that his LUTPA claim is not preempted because it is based upon conduct beyond just the use of his schematic and design, BP asserts that Mabile's

---

[174] Rec. Doc. 38 at 3 (citing *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156–57 (1989)).

[175] *Id.*

[176] *Id.* at 4 (citing *BASF Agrochemical Products v. Unkel*, No. 05-1478, 2006 WL 3533133, at *6–7 (W.D. La. Dec. 7, 2006)).

[177] *Id.* (citing *Bonito Boats*, 489 U.S. at 165 (emphasis in original)).

[178] *Id.*

[179] *Id.* (citing *Ultra-Precision*, 411 F.3d at 1381).

amended complaint does not identify any such conduct, nor does his brief identify any such conduct.[180] Instead, BP asserts that Mabile's LUTPA claim is merely a vehicle to seek compensation for an alleged unauthorized use of his publicly disclosed, unpatented Mabile Cap design, *i.e.* to receive patent-like protection.[181]

Finally, BP contends that Mabile is also using his unjust enrichment claim to seek "patent-like royalty" for using a product in the public domain, which was held to be preempted in *Ultra-Precision*.[182] BP contends that in *Wawrynski v. H.J. Heinz Co.*, a case cited by Mabile, the plaintiff had a patent on a food container and asserted a claim for unjust enrichment based upon "packaging and marketing ideas" that were beyond the patented invention itself, which were not preempted.[183] Here, BP asserts that Mabile's unjust enrichment claim is based only on the alleged use of an unpatented, publicly disclosed invention.[184]

### 2.    Conversion

BP represents that Mabile's conversion claim is only premised on BP's "alleged use of his 'intellectual property' contained in the schematic for his purported invention," and argues that Mabile "does not allege that BP interfered with, or even received, any of his physical property."[185] Moreover, BP asserts that it is "undisputed" that Mabile's conversion claim rests on BP's alleged

---

[180] *Id.* at 4–5.

[181] *Id.* at 5. Moreover, BP argues that Mabile's reliance on *Rodime PLC v. Seagate Technology, Inc.* is misplaced because the holding makes clear that the inclusion of additional elements in a state law claim that is not found in a patent law cause of action does not prevent preemption *if it seeks patent-like protection* to subject matter addressed by federal patent law. *Id.* (quoting *Rodime PLC v. Seagate Technology, Inc.*, 174 F.3d 1294, 1306 (Fed. Cir. 1999)).

[182] *Id.* (citing *Ultra-Precision*, 411 F.3d at 1382).

[183] *Id.* at 6 (citing 574 F. App'x 99 (3d Cir. 2014)).

[184] *Id.*

[185] *Id.*

use of the "information" contained in Mabile's schematic, and that Mabile failed to identify any legal support for his contention that conversion can apply to incorporeal property.[186] Rather, the cases cited by Mabile, *Joe Hand* and *Endotech*, both involved physical objects (a satellite signal) and documents (physical business plans), and not intellectual property.[187]

### 3.   Unfair Trade Practices

Next, BP again argues that Mabile's claim under LUTPA must satisfy Rule 9(b)'s heightened pleading requirement because his claim is premised upon allegedly fraudulent behavior.[188] BP supports this argument by asserting that Mabile's LUTPA allegations match the three elements required to state a cause of action for fraud in Louisiana: "(1) a misrepresentation of material fact, (2) made with intent to deceive, (3) causing justifiable reliance with resultant injury."[189] For example, BP argues that Mabile's amended complaint explicitly asserts there were misrepresentations; implicitly alleges the misrepresentations were made with the intent to deceive by stating that "[a]s shown by BP's refusal to properly compensate Mr. Mabile for his design, BP's Website was used by BP to extract the information and knowledge it desperately needed while avoiding an obligation to pay just compensation"; and directly alleges justifiable reliance by asserting that "individuals who submitted ideas to BP's Website justifiably believed they would receive compensation."[190]

---

[186] *Id*. at 7.

[187] *Id.* (citing *Joe Hand Promotions, Inc. v. Ashby*, No. 13-4747, 2014 WL 1330027, at *4 (E.D. La. Apr. 2, 2014); *Endotech USA v. Biocompatibles Int'l PLC*, No. 00-0957, 2000 WL 1594086, at *10 (E.D. La. Oct. 24, 2000)).

[188] *Id.* at 8.

[189] *Id.* (quoting *Chapital v. Harry Kelleher & Co.,* 144 So. 3d 75, 86 (La. Ct. App. 2014)).

[190] *Id*. at 8–9 (citing Rec. Doc. 28 at 8–9.

### 4.    Unjust Enrichment

BP further argues that Mabile does not dispute that his unjust enrichment claim is based on the same theory as his unfair trade practices claim under LUTPA.[191] Moreover, BP responds that Mabile's argument that he never had an UTSA claim does not mean there is a "gap in the law" here; UTSA provides a remedy for alleged misappropriation of non-confidential ideas like Mabile asserts, further precluding an unjust enrichment claim.[192]

### 5.    Essential Elements

Finally, BP argues that its proposed required elements for use of idea claims were used to evaluate similar well-capping claims in *McIntyre*, and that Mabile's claims clearly fail under each of the three requirements.[193]

### D.    *Mabile's Post-Hearing Supplemental Memorandum*

Following oral argument in this matter, Mabile filed a "Post-Hearing Submission in Opposition to Motion to Dismiss."[194] In this supplemental memorandum, Mabile further asserts that his LUTPA claim is not preempted by federal patent law.[195] In support, Mabile cites a Western District of Louisiana case, *Total Rebuild, Inc. v. Streamline Hose and Fittings, Inc.*, where, he argues, the court rejected the defendant's argument that the plaintiff's LUTPA claim was preempted by federal patent law, stating that "Louisiana courts have denied attempts to apply federal patent law preemption to LUTPA claims."[196] Mabile contends that in *Total Rebuild*, the

---

[191] *Id.* at 10.

[192] *Id.*

[193] *Id.* at 11.

[194] Rec. Doc. 42.

[195] *Id.* at 1.

[196] *Id.* (citing No. 6:15-01172, 2015 WL 9217451 (W.D. La. Sept. 25, 2015)).

court cited two Louisiana cases, which were referred to as *NovelAire I*[197] and *NovelAireII*,[198] where, Mabile asserts, the Louisiana courts found that the United States Supreme Court had suggested that states should continue to regulate unsavory business practices even if they incidentally involve intellectual property and information that may be subject to federal patent law.[199]

Likewise, in *Hall v. Bed Bath and Beyond, Inc.*, Mabile contends that the Federal Circuit made clear that "principles of patent law preemption do not override potential causes of action based on unfair commercial practices."[200] In addition, Mabile cites another Federal Circuit case, *Rodime PLC v. Seagate Technology, Inc.*, where the court stated that patent laws do not preempt state law claims if the state law claim includes "additional elements not found in the federal patent law cause of action and if they are not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law."[201]

Mabile also argues that his unjust enrichment claim is not preempted by federal patent law. In support, he cites *University of Colorado Foundation, Inc. v. American Cyanamid Co.*, where the Federal Circuit found that a claim based on the "alleged wrongful use of the [plaintiffs'] research results" was not an attempt to enforce patent-like intellectual property rights.[202] Mabile points out that the court further noted that unjust enrichment there would not interfere with the federal patent scheme, but rather benefit society by requiring restitution in the face of unjust

---

[197] *NovelAire Techs., L.L.C. v. Harrison*, 08-157 (La. App. 5 Cir. Aug. 19, 2008); 994 So. 2d 57.

[198] *NovelAire Techs., L.L.C. v. Harrison*, 2009-1372 (La. App. 4 Cir. Oct. 13, 2010); 50 So. 3d 913.

[199] Rec. Doc. 42 at 1–2 (citing 2015 WL 9217451, at *6).

[200] *Id.* at 2 (citing 704 F.3d 1357 (Fed. Cir. 2013)).

[201] *Id.* at 3 (citing 174 F.3d 1294, 1306 (Fed. Cir. 1999)).

[202] *Id.* at 4 (citing 342 F.3d 1298, 1306 (Fed. Cir. 2003)).

enrichment.[203]

In response to comments made by BP at this Court's February 17, 2016 oral argument, Mabile also notes that there is no allegation in his amended complaint that he held a publicly televised demonstration of the Mabile Cap prototype or demonstrated the Mabile Cap in the presence of the mayor of Grand Isle, Louisiana, and therefore his claims are not foreclosed by a demonstration to third parties.[204] Moreover, Mabile asserts that, more importantly, his schematic for the invention was not in the public domain.[205]

**E.   *BP's Reply to Mabile's Post-Hearing Memorandum***

In response to Mabile's post-hearing memorandum,[206] BP contends that even if Mabile's state law claims require additional elements, they all still seek a "patent-like remedy" by focusing on BP's unauthorized use of a purported invention.[207] BP contends that in *University of Colorado Foundation*, the Federal Circuit found that the unjust enrichment claim "was not preempted by federal patent law because it sought restitution for unfair use of confidential information, not any patent-like protection over an unpatentable or publicly-available technology."[208] BP argues that *Univ. of Colorado Found., Inc. v. Am. Cyanamid Co*, a Federal Circuit case cited by Mabile, is distinguishable because it involved the taking and improper distribution of a confidential manuscript, and not an unauthorized use of a publicly disclosed invention that would have been

---

[203] *Id.*

[204] *Id.* at 5.

[205] *Id.* Mabile contends that fact that a demonstration was performed does not make the idea non-confidential because the invention could not have been duplicated by others who merely viewed the demonstration. *Id.* at 5–6 (citing *Tubular Threading, Inc. v. Scandaliato*, 443 So. 2d 712 (La. App. 5 Cir. 1983) (holding that a viewing of an invention did not render it non-confidential when the system could not be replicated without the drawings)).

[206] Rec. Doc. 46 at 2.

[207] *Id.*

[208] *Id.* (quoting *Tavory v. NTP, Inc.*, 297 F. App'x 976, 983 (Fed. Cir. 2008)).

preempted.[209]

In response to Mabile's argument that his LUTPA claim is not preempted, BP asserts that Mabile only cites cases where the allegations involved unfair and deceptive conduct entirely separate and apart from any allegation of the unauthorized use of a public invention.[210] However, BP asserts that none of the cases cited by Mabile are persuasive because none involved an unfair competition claim premised upon the unauthorized use of a publicly disclosed invention.[211] For example, BP contends that in *Total Rebuild*, which BP notes is not binding precedent, the LUTPA claim was based on the defendant making its product "aesthetically identical" to the plaintiff's product in order to cause confusion among customers.[212] Likewise, BP represents that *NovelAire* involved "less than savory business practices" where the defendant "secretly used the plaintiff's materials, resources, and equipment to develop improvements" and engaged in conduct that violated confidentiality obligations.[213]

In addition, BP asserts that Mabile cannot dispute the public disclosure of his invention because he alleged in his amended complaint that he disclosed it both to BP employees without any allegation of confidentiality, as well as to a member of the United States Coast Guard.[214] Furthermore, BP contends that in his original complaint, Mabile alleged that he publicly disclosed his invention to the mayor of Grand Isle, and in his opposition to the instant motion, stated that he

---

[209] *Id.* (citing 342 F.3d 1298 (Fed. Cir. 2003)). *See Tavory v. NTP, Inc.*, 297 F. App'x 976, 983–84 (Fed. Cir. 2008) (stating that if *University of Colorado Foundation* involved a dispute regarding whether the defendant had made unauthorized use of a publicly disclosed invention, it would be governed exclusively by federal patent law).

[210] *Id.* at 4.

[211] *Id.* at 3.

[212] *Id.* at 3–4 (citing No. 6:15-cv-1172, 2015 WL 9217451, at *1 (W.D. La. Sept. 25, 2015)).

[213] *Id.* (citing *Novelaire Techs., L.L.C. v. Harrison*, 994 So.2d 57, 59 (5th Cir. 2008)).

[214] *Id.*

made a public demonstration that was televised on the local news.[215] BP contends that these admissions are binding and may be considered by the Court at the motion to dismiss stage.[216]

### III. Law and Analysis

*A.*    *Legal Standard*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[217] To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[218] A claim "has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[219] A complaint need not contain "detailed factual allegations," but rather "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"[220] In resolving a motion to dismiss, this Court "draw[s] all reasonable inferences in the Plaintiff[s'] favor."[221] Motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and [are] . . . rarely granted."[222]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant,

---

[215] *Id.*

[216] *Id.* (citing *City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990) ("We can appropriately treat statements in briefs as binding judicial admissions.")).

[217] Fed. R. Civ. P. 12(b)(6).

[218] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[219] *Id.* (citing *Twombly*, 550 U.S. at 556).

[220] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citations omitted).

[221] *Id.*

[222] *Id.*

and all facts pleaded are taken as true.[223] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[224] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[225] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[226] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[227] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[228] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[229] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[230]

Where a party alleges fraud or mistake, Federal Rule of Civil Procedure 9(b) requires that those allegations "state with particularity the circumstances constituting fraud or mistake."[231]

---

[223] *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[224] *Iqbal*, 556 U.S. at 677–78.

[225] *Id.* at 679.

[226] *Id.* at 678.

[227] *Id.*

[228] *Id.*

[229] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[230] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

[231] *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).

"What constitutes 'particularity' will necessarily differ with the facts of each case . . . ."[232] "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."[233] This Court applies Rule 9(b) to fraud claims "with 'bite' and 'without apology.'"[234] Such claims must contain "simple, concise, and direct" allegations of the "circumstances constituting fraud," which "must make relief plausible, not merely conceivable, when taken as true."[235]

**B.**      ***Whether the Court May Consider Evidence Outside the Pleadings***

    **1.**      **MDL Phase II Findings**

BP requests that this Court take judicial notice of the MDL 2179 Court's Findings of Fact and Conclusions of Law from the MDL Phase II trial to consider when determining if Mabile has failed to state his claims under BP's Rule 12(b)(6) motion to dismiss.[236] Importantly, BP requests that this Court take judicial notice of the contents of the findings, rather than the fact that findings were issued.[237] BP argues that because both parties designated the MDL Phase II Findings to be part of the record in this matter when it was severed from MDL 2179, and because Mabile "endorsed the use of MDL 2179 record documents by attaching two MDL trial demonstrative

---

[232] *Guidry v. Bank of LaPlace,* 954 F.2d 278, 288 (5th Cir. 1992).

[233] *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139 (5th Cir.1992) (internal quotation marks and citation omitted).

[234] *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d at 185.

[235] *Id.* at 186.

[236] Rec. Doc. 30-1 at 15.

[237] *Id.* at 15.

exhibits to his Amended Complaint,"[238] the Court should consider it here.[239] In opposition, Mabile contends that it would be inappropriate to consider the MDL Phase II Findings at this stage, both as a procedural matter—reference to other parts of the record should only be made on a motion for summary judgment[240]—and a factual matter—the Court does not yet have enough information to analyze whether Mabile's idea was used in the 3-ram Capping Stack.[241]

It is well established that, in deciding whether to grant a motion to dismiss pursuant to Rule 12(b)(6), a district court may not "go outside the complaint."[242] If documents outside the pleadings are presented and considered by the court, the motion must be treated as one for summary judgment under Rule 56.[243] By contrast, a district court may decline to consider the submission of extraneous materials and refer solely to the pleadings, thereby preserving the motion as a motion to dismiss under Rule 12(b)(6).[244] The Fifth Circuit recognizes one exception to that rule: a district court may consider documents attached to the motion to dismiss if they are referred to in the complaint and are central to the claim.[245]

Under Rule 201 of the Federal Rules of Evidence, a court may also judicially notice certain

---

[238] *Id.* at 16 & n.2.

[239] *See* Rec. Doc. 13 (memorandum designating document from MDL record).

[240] Rec. Doc. 31 at 17.

[241] *Id.*

[242] *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009); *Carter v. Target Corp.*, 541 F. App'x. 413, 416–17 (5th Cir. 2013).

[243] Fed. R. Civ. P. 12(d); *see U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015); *Underwood v. Hunter*, 604 F.2d 367, 369 (5th Cir. 1979).

[244] *See U.S. ex rel. Long.*, 798 F.3d at 275 (holding that a district court does not need to convert a motion to dismiss to a motion for summary judgment if it does not rely on a party's submission of extraneous materials).

[245] S*ee In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

adjudicative facts, *sua sponte* or by request of a party, when considering a motion to dismiss.[246] In particular, the Court may take judicial notice of any adjudicative fact that is "not subject to reasonable dispute" in that it is either "(1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[247] A district court may only take judicial notice of adjudicative facts under Rule 201, but not legal determinations of another court.[248] When a party requests that the Court take judicial notice and supplies the court with the necessary information, the Court must take judicial notice.[249] The decision to take or refuse to take judicial notice is reviewed for an abuse of discretion.[250]

In the Fifth Circuit, courts may ordinarily take judicial notice of public or judicial records for such indisputable facts as proving a transcript exists in the docket, a judgment was filed, or a previous litigation was commenced.[251] However, it is rarely permissible for a court to take notice of the factual findings of another court for the truth asserted therein; to do so, the factual findings must satisfy Rule 201's indisputability requirement, *i.e.* be beyond "reasonable dispute."[252] The

---

[246] Fed. R. Evid. 201(c).

[247] Fed. R. Evid. 201(b).

[248] *Taylor v. Charter Med. Corp*., 162 F.3d 827, 830–31 (5th Cir. 1998) (stating that a court cannot take judicial notice of another district court's legal determination that a private party is a state actor).

[249] Fed. R. Evid. 201(c)(2).

[250] *See Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011); *Taylor*, 162 F.3d at 829.

[251] *See Ferguson v. Extraco Mortg. Co.,* 264 Fed. Appx. 351, 352 (5th Cir. 2007) (per curiam) (citing *Taylor,* 162 F.3d at 830); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick,* 15 F.3d 1338, 1343 n.6 (5th Cir.1994)); *Kinnett Dairies, Inc. v. Farrow,* 580 F.2d 1260, 1277 n. 33 (5th Cir. 1978) ("[W]e find no error in the district court's judicial notice of materials in the court's own files from prior proceedings."); *see also Brown v. Lippard,* 350 Fed. Appx. 879, 883 n. 2 (5th Cir.2009) (per curiam) (citing cases that authorized judicial notice of the record in related cases to support taking judicial notice of the existence of a transcript through a docket entry).

[252] *Taylor*, 162 F.3d at 830 ("It is not necessary at this point for us to determine whether courts in this circuit are never permitted to take notice of the factual findings of another court or are permitted to do so on *rare* occasion, subject to the Rule 201's indisputability requirement . . . ." (emphasis added)).

fact in question must be "the type of self-evident truth that no reasonable person could question, a truism that approaches platitude or banality."[253] While it is "conceivable that a finding of fact may satisfy" Rule 201(b), factual findings are generally disputable and were disputed at trial, and thus may not be the subject of judicial notice.[254]

Here, the MDL Phase II Findings were issued on January 15, 2015, after a twelve day trial.[255] The MDL Phase II Findings consist of forty-four pages of findings split into two segments: the "Source Control" segment, which concerned "the conduct or omissions relative to stopping the discharge of hydrocarbons," and the "Quantification" segment, which determined the "amount of oil actually released into the Gulf of Mexico."[256] The source control segment is further split into a "Stipulated Facts" section and a "Findings on Disputed Issues" section.[257] The first section was stipulated to by all the parties to the source control segment, which the MDL Phase II Findings state includes "private plaintiffs and claimants-in-limitation (represented by the Plaintiffs' Steering Committee or 'PSC')."[258] The MDL Phase II Findings do not explicitly state whether Mabile was a party to the source control segment or if the stipulated facts were ever in dispute.[259]

As stated *supra*, in the Fifth Circuit, a court may rarely take judicial notice of the judicial findings of another court when considering a motion to dismiss.[260] Doing so would only be

---

[253] *Id.*

[254] *Id* (quoting *General Electric Capital Corporation v. Lease Resolution Corporation*, 128 F.3d 1074 (7th Cir.1997)). *See also* Wright & Miller, 21B Fed. Prac. & Proc. Evid. § 5106.4 (2d ed.).

[255] *See* Rec. Doc. 17-1 at 3.

[256] *Id.*

[257] *Id.* at 3, 7–36.

[258] *Id.* at 5–6.

[259] *Id.*

[260] *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998) ("It is not necessary at this point for us to determine whether courts in this circuit are never permitted to take notice of the factual findings of another court or

appropriate if the findings are beyond dispute, *i.e.* "one that only an unreasonable person would insist on disputing."[261] Here, the MDL Phase II Findings include findings on disputed factual issues as well as conclusions of law.[262] However, as the Fifth Circuit has held, facts that were disputed in a previous case cannot be the subject of judicial notice merely because a court has issued final findings of fact in that case.[263] Likewise, the Fifth Circuit has held that Rule 201 only extends to adjudicative *facts*, and not to legal determinations.[264] Taking judicial notice of the content of another court's findings, "merely because it had been found to be true in some other action," would risk rendering the doctrine of collateral estoppel "superfluous."[265] BP's urged use of the MDL Phase II Findings is expansive, and, in its motion to dismiss, BP relies on findings of disputed issues of fact[266] and trial exhibits not part of the MDL Phase II Findings[267] to support its

---

are permitted to do so on *rare* occasion, subject to the Rule 201's indisputability requirement . . . We note, however, that we have difficulty conceiving of an adjudicative fact found in a court record that is not subject of reasonable dispute and, therefore, of which a court could take judicial notice.").

[261] *Id*. at 831 n.28 (quoting *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994)).

[262] *See, e.g.* Rec. Doc. 17-1 at 36 ("[I]t cannot be said that the decisions made and actions taken post-blowout were unreasonable."); *Id*. at 37 ("[S]imple negligence is not at issue here."); *Id*. at 38 ("The Court finds that BP was not grossly negligent, reckless, willful, or wanton in its source control planning.")

[263] *See Ferguson v. Extraco Mortgage Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) (holding that the court could not have taken judicial notice of facts in two similar cases where the facts were subject to dispute, even though the judge was the same in all three cases);

[264] *See Taylor*, 162 F.3d at 831 (citing Charles Alan Wright & Kenneth W. Graham, Federal Practice & Procedure: Evidence § 5103 at 472–73 (1977) (stating that courts cannot take judicial notice of legal determinations under Rule 201)).

[265] *Id*. at 830.

[266] *See, e.g.*, Rec. Doc. 30-1 at 19 (pointing to the finding on a dispute issue that the "scientific principles and materials necessary for designing and creating capping stacks were available prior to the HORIZON/Macondo blowout and known to BP . . . [and that] technology to build a capping stack was available . . . prior to the blowout.").

[267] For example, BP cites an October 2013 bench trial transcript, where Defendant Transocean cross-examined a BP employee, Mr. Trevor Smith, regarding the timeline of when the 3-ram Capping Stack was developed. Rec. Doc. 30-1 at 19 (citing Rec. Doc. 17-19). Likewise, BP also cites a trial exhibit of an internal BP email chain that includes May 30 photograph of its 3-ram Capping Stack. *Id*. (citing Rec. Doc. 17-29).

arguments. These findings, however, cannot be characterized as "self-evident truth[s]" that are beyond dispute,[268] and BP provides no case law to convince the Court otherwise.[269] Moreover, while one section of the MDL Phase II Findings includes stipulated facts, the Court notes that merely because certain facts were stipulated to for a large and complex case such as MDL 2179 does not necessarily mean the facts were not disputed before or are not at issue in this particular case.[270] While the Court may properly consider such evidence if brought on a motion for summary judgment, the Court declines to do so here in its consideration of BP's motion to dismiss. Therefore, the Court denies BP's request for judicial notice and will continue its analysis without consideration of or reliance on the MDL Phase II Findings.[271]

## 2.   BP's "Figure 1"

Relatedly, Mabile also argues that, on a motion to dismiss, this Court should not consider BP's "Figure 1: Annotated Exhibit 1 of the Amended Complaint, Rec. Doc. 28-1" submitted in

---

[268] *Taylor*, 162 F.3d at 830.

[269] In support of its contentions, BP cites the Eastern District of Louisiana case *G.C.P. Tel. Cards LLC v. ADT Security Servs., Inc.*, No. 10-4305, 2011 WL 2118732, at *3 (E.D. La. May 24, 2011) (McNamara, J.). However, in *G.C.P. Tel. Cards LLC*, the district court merely stated that judicial notice of items in the record, related cases, and public records is possible on a motion to dismiss, but did not itself take judicial notice of such items. *Id*. Moreover, the three cases cited in *G.C.P. Tel. Cards LLC* by the district judge in support of that holding are not analogous to BP's request here, as each involve a Rule 12(c) motion where the courts properly considered documents attached to or referenced in the plaintiff's complaint. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 313 (5th Cir. 2002) (affirming the consideration of documents on a Rule 12(c) motion that were referenced in the plaintiff's complaint, reply, and objections); *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 n.4 (5th Cir. 1998) (noting that considering documents attached to the pleadings did not transform a Rule 12(c) motion into one for summary judgment); *Hebert Abstract Co. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (noting that a court may consider judicially noticed facts on a Rule 12(c) motion).

[270] *See, e.g.*, *Gisclair v. Galliano Marine Serv.*, No. CIV A 05-5223, 2007 WL 1238902, at *2 (E.D. La. Apr. 25, 2007) (Vance, J.) (holding that the court would not take judicial notice of stipulated facts that were previously disputed).

[271] *See U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015) ("If the district court does not rely on materials in the record, such as affidavits, it need not convert a motion to dismiss into one for summary judgment.").

BP's memorandum in support of its motion to dismiss.[272] The Fifth Circuit has held that when "non-pleading materials are filed with a motion to dismiss . . . a district court has complete discretion" to accept or reject the exhibits offered with a Rule 12(b)(6) motion.[273] By annotating Mabile's exhibit and adding new facts that were not referenced in Mabile's amended complaint, *e.g.*, what object Mabile's invention was allegedly intended to attach to, this Court finds that BP has submitted evidence outside the pleadings. In *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, the Fifth Circuit approved of a district court's decision declining to consider the evidence and materials submitted in the defendant's reply brief when ruling on a motion to dismiss.[274] Here, this Court expressly declines to consider such evidence outside the pleadings, including BP's Figure 1 included in its opposition memorandum.

### 3.   Demonstrations of Mabile Cap

Finally, BP cites to alleged facts contained in Mabile's original complaint that the mayor of Grand Isle was also in attendance at one of Mabile's demonstrations of the Mabile Cap, and the statement in Mabile's opposition to the motion to dismiss that his demonstration was televised on the local news, neither of which is alleged in Mabile's amended complaint.[275] BP argues that such admissions are binding and may be considered by the Court during a motion to dismiss.[276] BP cites a Fifth Circuit case, *City National Bank v. United States*, in support of its assertion that the facts that Mabile alleged in his original complaint and in his opposition to the motion to dismiss are

---

[272] *Id* (citing Rec. Doc. 30-1 at 11).

[273] *See Isquith for & on Behalf of Isquith v. Middle S. Utilities, Inc.*, 847 F.2d 186, 196 (5th Cir. 1988).

[274] *Id*.

[275] Rec. Doc. 46 at 4 (citing Rec. Doc. 1-2 at 1–2; Rec. Doc. 31 at 16).

[276] *Id*.

binding and may be considered by the Court at the motion to dismiss stage.[277] At issue in *City National Bank*, however, was whether a party was bound by a misstatement made in an appellate brief or if the party could correct the mistake at oral argument, not whether a party is bound on a Rule 12(b)(6) motion to dismiss by facts that are not alleged in an amended complaint.[278] Moreover, in direct contrast, BP urges the Court to ignore other facts Mabile asserts in his memoranda that were not alleged in his amended complaint, arguing that Mabile "cannot now supplement his complaint with self-serving assertions made for the first time now . . . ."[279]

The Fifth Circuit has held that an amended complaint "supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."[280] Here, no such reference or adoption of the original complaint was made by Mabile. Moreover, in deciding whether to grant a motion to dismiss pursuant to Rule 12(b)(6), a district court may not "go outside the complaint" to other alleged facts.[281] Thus, the Court will only consider those facts alleged in the amended complaint to determine BP's motion to dismiss.

## C.    *Whether Mabile is Required to Allege Use, Novelty, and Confidentiality*

Next, BP argues that, because each of Mabile's three claims are "use of idea" allegations, they must satisfy three implicit elements: use, novelty, and confidentiality. In support of this assertion, BP cites to a 1964 Fifth Circuit case interpreting Florida conversion and unjust

---

[277] Rec. Doc. 46 at 4 (citing 907 F.2d 536, 544 (5th Cir. 1990)).

[278] 907 F.2d at 544.

[279] Rec. Doc. 46 at 5.

[280] *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985)).

[281] *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009); *Carter v. Target Corp.*, 541 F. App'x. 413, 416–17 (5th Cir. 2013).

enrichment law;[282] a 1969 Eastern District of Louisiana patent case that cites to that Fifth Circuit case without tying it to Louisiana state law;[283] and a District of Alaska case involving a similar well-capping claim against BP but interpreting Alaska law.[284] In response, Mabile argues that these cases are "approximately a half-century old, and are not based in Louisiana law."[285]

Under Louisiana's civil law tradition, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes."[286] The Louisiana Civil Code states that "[t]he sources of law are legislation and custom,"[287] and "[l]egislation is a solemn expression of legislative will."[288] "[T]he primary basis of law for a civilian is legislation, and not (as in the common law) a great body of tradition in the form of prior decisions of the courts."[289] Thus, to determine the necessary requirements to prove an alleged claim, courts must first look to statutory law[290] *Stare decisis* is a foreign concept to the Civil Law of Louisiana.[291] Therefore, this Court is guided by decisions rendered by Louisiana Courts of Appeal, "particularly when numerous decisions are in accord on a given issue—the so-called *jurisprudence constant*—but

---

[282] *Official Airlines Schedule Info. Serv., Inc. v. E. Air Lines, Inc.*, 333 F.2d 672, 673–74 (5th Cir. 1964).

[283] *Thomson Mach. Co. v. LaRose*, 306 F. Supp. 681, 695 (E.D. La. 1969).

[284] *McIntyre v. BP Expl. & Prod., Inc.*, No. 3:13-CV-149 RRB, 2015 WL 999092, at *1 (D. Alaska Mar. 5, 2015).

[285] Rec. Doc. 31.

[286] *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 547 (5th Cir.2004); *see also Andretti Sports Mktg. Louisiana, LLC v. Nola Motorsports Host Comm., Inc.*, 147 F. Supp. 3d 537, 552 (E.D. La. 2015) (Brown, J.).

[287] La. Civ. Code art. 1 (2015).

[288] La. Civ. Code art. 2.

[289] *See Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir.1992) (quoting Tate, *Techniques of Judicial Interpretation in Louisiana*, 22 La. L. Rev. 727 (1962)).

[290] *Id.* (footnote omitted).

[291] *Id.*

[this Court is] not strictly bound by them."[292]

Here, BP has cited no binding authority, nor has this Court uncovered any, mandating that Mabile must prove three additional elements when a Louisiana state law claim for conversion, unfair trade practices, or unjust enrichment are premised on a "use of idea" allegation. By contrast, in the numerous persuasive Louisiana state court decisions that discuss what a plaintiff must allege to state a claim for conversion,[293] unjust enrichment,[294] or unfair trade practices under LUTPA,[295] BP has not cited any that list confidentiality, novelty, or use as separate elements.

To impose new elements from cases based on Florida or Alaska law "would require a drastic departure from the civil law methodology followed by the Louisiana Supreme Court."[296] While these three issues may implicitly arise on a case-by-case basis as questions of fact—for example, to what extent BP used Mabile's design is a question that may arise in each of Mabile's claims—this Court will not depart from Louisiana's civil law tradition and add new necessary elements for established causes of action. Accordingly, the Court denies BP's motion to dismiss for failure to allege use, confidentiality, or novelty as "necessary requirements" for Mabile's

---

[292] *Id.*

[293] *See Dual Drilling Co. v. Mills Equip. Investments, Inc.*, 98-0343 (La. 12/1/98), 721 So. 2d 853, 857 ("A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel.").

[294] *See McPhearson v. Shell Oil Co.*, 584 So. 2d 373, 376 (La. Ct. App. 1991) (stating that the elements of unjust enrichment are "1) defendant was enriched; 2) he was impoverished; 3) there was a connection between the enrichment and the impoverishment; 4) there was no justification or cause for the enrichment and impoverishment; and 5) plaintiff had no remedy at law." (citing *Minyard v. Curtis Products, Inc.*, 251 La. 624, 205 So.2d 422 (1967)).

[295] *See generally Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1059 (describing the range of conduct prohibited by the Louisiana Unfair Trade Practices and Consumer Protection Law).

[296] *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004).

Louisiana state law claims.[297]

## D. *Whether Mabile has Failed to Plausibly State Each Claim*

### 1. **Conversion**

BP raises two grounds for dismissal of Mabile's conversion claim: (1) that a conversion claim may only be stated for "chattel" or "goods," and not intangible, intellectual property; and (2) that Mabile voluntarily gave BP his schematic without ever requesting its return.[298] "The common law tort of conversion—a distinct act of dominion wrongfully exerted over another's property in denial of or inconsistent with the owner's right therein—has been recognized by Louisiana courts for over a century as an offense or quasi offense under [La. Civ. Code §] 2315."[299] To prevail on a claim of conversion, a plaintiff "must prove that (1) he owned or had the right to possess; (2) the defendant's use was inconsistent with the plaintiff's right of ownership; and (3) the defendant's use constituted a wrongful taking."[300] The Louisiana Supreme Court has explained that the tort of conversion:

> … is committed when *any of the following* occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; *or* 7) ownership is asserted over the chattel.[301]

---

[297] Rec. Doc. 30-1 at 14.

[298] Rec. Doc. 30-1 at 21–23.

[299] *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 483 (5th Cir. 1986) (citing *Madden v. Madden*, 353 So.2d 1079, 1081 (La. App. 2d Cir. 1977)); *see also Importsales, Inc. v. Lindeman*, 92 So.2d 574 (La. 1957).

[300] *Gaunt v. Louisiana Citizens Prop. Ins. Corp.*, 512 F. Supp. 2d 493, 498 (E.D. La. 2007) (citing *Bernofsky v. Tulane University Medical School*, 962 F.Supp. 895, 906 (E.D. La. 1997) (citing *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 51 F.3d 553 (5th Cir.1995))).

[301] *Dual Drilling Co.*, 721 So. 2d at 856 (citing Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law § 1-2, at 3 (1996 & Supp. 1998); *Importsales, Inc. v. Lindeman*, 231 La. 663, 92 So.2d 574 (La. 1957); *see also Louisiana State Bar Assoc. v. Hinrichs*, 486 So. 2d 116 (La. 1986)) (emphasis added).

BP argues that the above shows that a claim for conversion only applies to "goods" and "chattel," which, in Louisiana, is deemed "corporeal movable" property.[302] Mabile counters that conversion can be applied to any property rights, including incorporeal movables.[303]

First, the Court notes that conversion is frequently, but not exclusively, defined as a cause of action involving property rights in tangible goods. For example, the Louisiana Supreme Court stated that "the tort of conversion has been limited to those major interferences with a *chattel*,"[304] while the Louisiana Fifth Circuit Court of Appeal described conversion as "[a]ny wrongful exercise or assumption of authority over another's *goods*."[305] The Fifth Circuit and another section in the Eastern District of Louisiana have also defined conversion as "any wrongful exercise or assumption of authority over another's *goods*, depriving him of the possession, permanently, or for an indefinite time."[306] Additionally, a court in the Western District of Louisiana rejected a conversion claim over patented intellectual property and held intangible rights can only be converted if it is embodied in or merged into a document.[307] However, conversion has not exclusively been described in such limited terms; for example, as stated *supra*, the Louisiana Supreme Court in *Dual Drilling* provided seven different circumstances when a conversion is

---

[302] Rec. Doc. 30-1 at 21. *See BASF Agrochemical Prod. v. Unkel*, No. 05 CV 1478, 2006 WL 3533133, at *7 (W.D. La. Dec. 7, 2006) ("'Chattel' is defined as '[m]ovable or transferable property; personal property; esp., a physical object capable of manual delivery and not the subject matter of real property.' Black's Law Dictionary (8th ed. 2004). In Louisiana, such property is deemed 'corporeal movable' property. La. Civ. Code art. 471.").

[303] Rec. Doc. 31 at 9–10.

[304] *Louisiana State Bar Ass'n v. Hinrichs*, 486 So. 2d 116, 120 (La. 1986) (emphasis added).

[305] *Kinchen v. Louie Dabdoub Sell Cars, Inc.*, 05-218 (La. App. 5 Cir. Oct. 6, 2005), 912 So. 2d 715, 718 (citing *F.G. Bruschweiler (Antiques) Ltd. v. GBA Great British Antiques, L.L.C.*, 03–792, at 7 (La. App. 5th Cir. Nov. 25, 2003), 860 So.2d 644, 649) (emphasis added)).

[306] *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 483 (5th Cir. 1986); *Gaunt v. Louisiana Citizens Prop. Ins. Corp.*, 512 F. Supp. 2d 493, 498 (E.D. La. 2007).

[307] *BASF Agrochemical Prod. v. Unkel*, No. 05 CV 1478, 2006 WL 3533133, at *7 (W.D. La. Dec. 7, 2006).

committed, two of which do not reference chattels or goods.[308] Likewise, other courts interpreting Louisiana law have frequently defined conversion in broader terms; for example, the Fifth Circuit has stated conversion is "a cause of action for the wrongful act of repudiation of the owner's right to *property*,"[309] while the Louisiana First Circuit Court of Appeal has stated it occurs when "one wrongfully does any act of domination over the *property* of another."[310]

Here, the Court finds it does not need to determine at this time whether a purely intangible property right may be converted under Louisiana law if Mabile has plausibly alleged that BP did, in fact, convert his physical property. BP argues that Mabile "has not plausible alleged that BP even received any of his physical property."[311] Instead, BP asserts that Mabile is asserting a claim based on an "incorporeal" object, defined in the Louisiana Civil Code as a thing that has "no body, but [is] comprehended by the understanding, such as the rights of inheritance, servitudes, obligations, and right of intellectual property."[312] However, in his amended complaint, Mabile alleges that BP "*used Mr. Mabile's schematic* to create the device that stopped the oil spill," that BP "intentionally and willfully exercise authority over Mr. Mabile's intellectual property and *the Mabile Cap schematic*" and that Mabile was damaged "as a result of BP's *unauthorized and improper use of the schematic* to reconstruct and use the Mabile Cap design."[313] The schematic— a physical, tangible representation of the Mabile Cap—was attached to Mabile's amended

---

[308] *Dual Drilling Co.*, 721 So. 2d at 856.

[309] *Chrysler Credit Corp*, 783 F.2d at 483 (5th Cir. 1986).

[310] *Aymond v. State, Dept. of Revenue and Taxation*, 951663 (La. App. 1st Cir. Apr. 4, 1996), 672 So. 2d 273.

[311] *Id*. at 23.

[312] *See* Rec. Doc. 41 at 2 (quoting *Lamar Advertising Co. v. Continental Cas. Co.*, 396 F.3d 654, 661 (5th Cir. 2005) (quoting La. Civ. Code art. 461)).

[313] Rec. Doc. 28 at 7.

complaint.[314] Likewise, Mabile alleges he submitted a letter to BP's website and to its Houston

office "generally describing the Mabile Cap's functionality."[315] Thus, Mabile has alleged that BP

received and used two pieces of Mabile's physical property to construct the 3-ram Capping Stack:

Mabile's schematic and his letter. In other words, construing the claim liberally in favor of Mabile,

this Court finds that Mabile's conversion claim plausibly rests on a "corporeal" object, defined in

the Louisiana Civil Code as a thing that has "a body, whether animate or inanimate, and can be

felt or touched."[316]

 Here, the Court finds *Endotech*, the Eastern District of Louisiana case cited by both parties,

most instructive. In *Endotech*, another district judge in the Eastern District of Louisiana found that

taking and using a plaintiff's business plans without authorization was sufficient to state a claim

for conversion in Louisiana.[317] There, the court rejected the argument that, because the plaintiff's

claims centered on the intangible marketing, distribution, and financial information contained

within the business plans, plaintiff's claims amounted to claims of conversion for intangible

property.[318] Rather, the judge recognized that physical documents themselves supported plaintiff's

conversion claim, such that the judge did not need to address the question of whether intangible

property could be converted.[319] BP attempts to distinguish *Endotech* from the case at hand by

arguing that the claim there was based on the use and distribution of the plaintiff's physical

---

[314] Rec. Doc. 28-1.

[315] Rec. Doc. 28 at 4.

[316] *See Lamar Advert. Co.*, 396 F.3d at 661 (quoting La. Civ. Code art. 461).

[317] *Endotech USA v. Biocompatibles Int'l PLC*, No. 00-0957, 2000 WL 1594086, at *14 (E.D. La. Oct. 24, 2000) (Duval, J.).

[318] *Id.*

[319] *Id.*

business plan documents, while Mabile's claims are really premised on the use of his abstract ideas and intellectual property.[320] However, the Court finds little distinction between the actions taken in *Endotech*—using the information within a proprietary business plan without authorization[321]— and the use of the schematic here, as both claims are premised on the unauthorized acquisition and use of physical documents containing valuable information.[322]

Moreover, the Court finds Mabile's claim to be distinct from a conversion claim premised on purely intellectual property like in *BASF Agrochemical Prods. v. Unkel*.[323] There, the court rejected the plaintiff's argument that defendants converted its patented technology by the manner in which defendants used the technology, which infringed on the plaintiff's patent.[324] Here, however, Mabile's conversion claim rests on BP's alleged use of his physical schematic without authorization to develop its 3-ram Capping Stack. That is, Mabile's claim is distinct because BP's acquisition and use of the schematic to reconstruct the Mabile Cap is integral to his allegations.[325]

Second, BP briefly states in one sentence that Mabile "voluntarily provided his schematic" to BP and the Coast Guard Engineer and "does not allege that he ever requested return" of the schematic, and therefore cannot bring a conversion action.[326] As federal and state courts in

---

[320] Rec. Doc. 30-1 at 23.

[321] *Endotech USA*, No. CIV. A. 00-0957, 2000 WL 1594086 at *1–3, *14.

[322] *See Dual Drilling Co.*, 721 So. 2d at 856 (stating that conversion "is committed when any of the following occurs . . . possession is acquired in an unauthorized manner").

[323] No. 05-1478, 2006 WL 3533133, at *7 (W.D. La. Dec. 7, 2006).

[324] *Id.* at 5–7.

[325] *See* Rec. Doc. 31 at 22 ("*After acquiring Mr. Mabile's schematic*, BP used the information therein, without Mr. Mabile's authorization, to reconstruct the Mabile Cap." (Emphasis added)).

[326] Rec. Doc. 30-1 at 22 (citing *Davis v. Am. Marine Corp.*, 163 So. 2d 163, 167–68 (La. Ct. App. 1964) ("when property is voluntarily given to another, there can be no claim for conversion unless the recipient provides 'an absolute, unqualified refusal to deliver'").

Louisiana have held, "when the owner consents to or ratifies the taking of his property, he is estopped from bringing an action for conversion."[327] For example, in *Gaunt*, another section in the Eastern District of Louisiana held that a defendant must only show that the owner took some action that demonstrates consent to or ratification of the taking of his property to defeat an action for conversion.[328]

However, Mabile does not allege he consented to BP's use of his schematic or voluntarily allowed BP to exercise ownership over it in the way BP alleges; rather, Mabile states that "BP and/or its agents *induced* Mr. Mabile to submit the Mabile Cap schematic to BP by misrepresenting that Mr. Mabile would receive acknowledgment and/or economic benefit if the Mabile Cap design was used to successfully cap the wellhead."[329] Additionally, Mabile asserts that BP used Mabile's "intellectual property and the Mabile Cap schematic . . . *[w]ithout Mr. Mabile's consent*."[330] Moreover, he argues that, "[w]ithout even communicating with Mr. Mabile beforehand, BP used Mr. Mabile's schematic to construct a device consistent with and identical to the Mabile Cap. Thus BP acquired possession of Mr. Mabile's design in an unauthorized manner, and Mr. Mabile has stated a claim for conversion."[331] Accordingly, the Court finds BP's consent argument unpersuasive, and holds that Mabile has plausibly alleged at this stage that BP did not have the authority to use his schematic.

Based on the forgoing, the Court finds that Mabile may assert a conversion claim and that,

---

[327] *Gaunt v. Louisiana Citizens Prop. Ins. Corp.*, 512 F. Supp. 2d 493, 498 (E.D. La. 2007) (citing *Blair v. Source One Mortgage Services Corp.*, 1997 WL 250040 (E.D.La.5/9/1997) (citing *Aymond v. State, Dept. of Revenue & Taxation*, 672 So.2d 273, 276 (La. App. 1st Cir.1996))).

[328] *Id* (citing *Aymond v. State, Dept. of Revenue & Taxation,* 672 So.2d 273, 276 (La. App. 1st Cir.1996)).

[329] Rec. Doc. 28 at 7 (emphasis added).

[330] *Id*. (emphasis added).

[331] Rec. Doc. 31 at 10.

construing the claim liberally in favor of Mabile, he has plausibly alleged sufficient facts to support his allegations. Mabile has alleged that (1) he owned or had the right to possess his schematic and the intellectual property contained within;[332] (2) he gave the schematic under the false understanding that BP would compensate or acknowledge him if it was used;[333] (3) that, as evidenced by the timing of the development of BP's solution, the interest showed by BP engineers in attending a demonstration and requesting a second demonstration, and the alleged material similarities between the Mabile Cap and the 3-ram Capping Stack, BP used his schematic in a way that was inconsistent with Mabile's rights;[334] and (4) that by taking and using Mabile's property in this manner, BP's use constitutes a wrongful taking.[335] In other words, Mabile has sufficiently alleged that BP acquired possession of Mabile's property "in an unauthorized manner."[336] Accordingly, the Court denies BP's motion to dismiss Mabile's conversion claim.

### 2.    Unfair Trade Practices

BP presents two possible grounds for dismissal for Mabile's unfair trade practices claim under LUTPA. First, BP argues that Mabile's claims must satisfy the Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements because they are implicitly premised on

---

[332] *Id.*

[333] *Id.* at 8 ("BP and/or its agents induced Mr. Mabile to submit the Mabile Cap schematic to BP by misrepresenting that Mr. Mabile would receive acknowledgment and/or economic benefit if the Mabile Cap design was used to successfully cap the wellhead.").

[334] *Id*. at 5, 8.

[335] *See Gaunt v. Louisiana Citizens Prop. Ins. Corp.*, 512 F. Supp. 2d 493, 498 (E.D. La. 2007) (citing *Bernofsky v. Tulane University Medical School*, 962 F.Supp. 895, 906 (E.D. La. 1997) (citing *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 51 F.3d 553 (5th Cir.1995))).

[336] *Dual Drilling Co.*, 721 So. 2d at 856 (citing Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law § 1-2, at 3 (1996 & Supp.1998); *Importsales, Inc. v. Lindeman*, 231 La. 663, 92 So.2d 574 (La.1957); *see also Louisiana State Bar Assoc. v. Hinrichs*, 486 So.2d 116 (La.1986)) (emphasis added).

allegations of fraud.[337] Second, even if Rule 9(b) does not apply, BP asserts that Mabile's allegations are "merely factually unsupported legal conclusions" that fail the plausibility standard set forth in *Twombly* and *Iqbal*.[338]

Rule 9(b) of the Federal Rules of Civil Procedure provides that when a plaintiff alleges "fraud or mistake," he must meet a heightened pleading standard by stating "with particularity the circumstances constituting fraud or mistake." However, the Supreme Court has not extended Rule 9(b) beyond averments of mistake and fraud.[339] Rather, the Supreme Court has advised that Federal Rule of Civil Procedure 8(a)'s simplified pleading standard, requiring only a "short and plain statement of the claim," generally applies to all civil actions "with limited exceptions."[340] Thus, the Fifth Circuit has held that Rule 9(b) does not apply to claims for negligent misrepresentation alone,[341] while district courts in the Fifth Circuit have also found that Rule 9(b) does not apply to such circumstances as breaches of fiduciary duty based on non-fraudulent conduct.[342] By contrast, district courts within the Fifth Circuit have found that Rule 9(b) applies to allegations of *fraudulent* misrepresentation and conspiracy to *defraud* under LUTPA must satisfy Rule 9(b).[343] However, as

---

[337] Rec. Doc. 30-1 at 24–25.

[338] *Id*. at 25.

[339] *See, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (declining to extend Rule 9(b)'s requirements to employment discrimination claims); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168–69 (1993) (declining to apply Rule 9(b) to municipal lability claims).

[340] *See Swierkiewicz*, 534 U.S. at 513; U.*S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).

[341] *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (holding that Rule 9(b) generally does not apply to negligent misrepresentation claims unless it is not plead separately from a plaintiff's fraud claims), *opinion modified on other grounds on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003).

[342] *In re Electronic Data Systems Corp. ERISA Litigation*, 305 F.Supp.2d 658, 672 (E.D. Tex. 2004).

[343] *Pinero*, 594 F. Supp. 2d at 721 (holding that that Rule 9(b) applied when plaintiff had directly alleged both fraud and *fraudulent* misrepresentation); *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, No. CIV. A. 11-00556-BAJ, 2014 WL 6674034, at *5 (M.D. La. Nov. 24, 2014) (holding that when a plaintiff's LUTPA claim is based on fraudulent misrepresentation and conspiracy to defraud, Rule 9(b) applies).

Wright & Miller note, while courts are split as to what constitutes fraud for the purposes of Rule

9(b), its application "should be construed narrowly and not extended to other legal theories or

defenses."[344]

LUTPA declares unlawful "[u]nfair methods of competition and unfair *or* deceptive acts

or practice in the conduct of any trade or commerce."[345] Courts determine what constitutes "unfair"

and "deceptive" conduct on a case-by-case basis.[346] Louisiana courts have stated that a practice is

unfair "when the practice is unethical, oppressive, unscrupulous, or substantially injurious."[347]

Likewise, Louisiana courts have described a trade practice as deceptive when it amounts to "fraud,

deceit *or* misrepresentation."[348] Thus, it is clear that LUTPA claims are not limited solely to

allegations of fraud, but may be independently premised on a range of non-fraudulent conduct.[349]

Here, Mabile has not explicitly alleged fraud or fraudulent conduct in his amended

complaint as a basis for his LUTPA claim against BP.[350] Rather, Mabile has alleged that "BP's

*misrepresentation* and failure to provide Mr. Mabile with compensation constitute *deceptive*

*practices* declared unlawful under [LUTPA] . . . [and] BP's refusal to compensate or recognize

Mr. Mabile for his design is, at least, an *unethical, immoral, and unscrupulous* act that *violates*

---

[344] Charles A. Wright, Arthur R. Miller, et al., 5A Fed. Prac. & Proc. Civ. § 1297 (3d ed.).

[345] La. Rev. Stat. § 51:1405 (emphasis added).

[346] *American Machinery Movers, Inc. v. Machinery Movers of New Orleans, LLC,* 136 F. Supp. 2d 599, 604 (E.D. La. 2001); *Core v. Martin,* 543 So.2d 619, 621 (La. App. 2 Cir. 1989).

[347] *See Pinero v. Jackson Hewitt Tax Serv. Inc*., 594 F. Supp. 2d 710, 720–21 (E.D. La. 2009) (Vance, J.) (citing *Jefferson v. Chevron U.S.A. Inc.,* 713 So.2d 785, 792 (La. App. 4 Cir. 1998)).

[348] *See id.* at 721 (citing *Jefferson,* 713 So.2d at 793) (emphasis added); *see also Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.,* 220 F.3d 396, 404 (5th Cir. 2000) ("To recover under LUTPA, a plaintiff must prove fraud, misrepresentation, or other unethical conduct.").

[349] *See Pinero v. Jackson Hewitt Tax Serv. Inc*., 594 F. Supp. 2d 710, 720–21 (E.D. La. 2009) (citing *Jefferson v. Chevron U.S.A. Inc.,* 713 So.2d 785, 792 (La.Ct.App.1998)

[350] *See* Rec. Doc. 28.

*public policy.*"[351]  Mabile also asserts that "BP and/or its agents induced Mr. Mabile to submit the Mabile Cap schematic to BP by *misrepresenting* that Mr. Mabile would receive acknowledgement and/or economic benefit if the Mabile Cap design was used."[352] Accordingly, unlike the plaintiffs in *Pinero* and *Brand Coupon Network* who specifically alleged *fraudulent* misrepresentations under LUTPA, and thus had to satisfy Rule 9(b), Mabile has premised his unfair trade practices claim under LUTPA on allegations of non-fraudulent conduct by BP.[353]

BP avers, however, that Mabile's LUTPA claim *implicitly* alleges fraudulent behavior, triggering Rule 9(b)'s heightened pleading requirement, because his allegations would also satisfy the necessary elements to prove fraud under Louisiana law.[354] According to BP, a cause of action for fraud is established when a plaintiff successfully alleges "(1) a misrepresentation of material fact, (2) made with intent to deceive, (3) causing justifiable reliance with resultant injury."[355] To satisfy the second necessary element of "intent to deceive," BP points to Mabile's assertion that "[a]s shown by BP's refusal to properly compensate Mr. Mabile for his design, BP's Website was used by BP to extract the information and knowledge it desperately needed while avoiding an obligation to pay just compensation."[356]

However, the Court is unpersuaded by BP's argument that this vague averment in Mabile's LUTPA claim necessarily alleges an intent to deceive that would satisfy the well-pleaded complaint rule for a claim of fraud. Mabile's allegation regarding how BP's website was used does

---

[351] *Id.* at 9.

[352] *Id.* at 8.

[353] *Pinero*, 594 F. Supp. 2d at 72; *Brand Coupon Network, LLC*, 2014 WL 6674034 at *5.

[354] Rec. Doc. 38 at 8–9.

[355] *Id.* at 8 (citing *Chapital v. Harry Kelleher & Co.,* 144 So. 3d 75, 86 (La. App. 4 Cir. 2014)).

[356] *Id.* at 9 (citing Rec. Doc. 28 at 8).

not necessarily imply that BP had the requisite intent to deceive needed to satisfy a fraud claim, or that Mabile's argument must be implying fraudulent conduct. Moreover, BP does not provide any case citations for its proposed theory that an allegation under LUTPA premised on non-fraudulent conduct must still satisfy Rule 9(b) if the plaintiff *could have* also alleged the defendant committed fraud. Additionally, even if this Court was to find that Mabile has alleged fraud along with his allegations of other non-fraudulent conduct, the Fifth Circuit has instructed that the "proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated."[357] Here, Mabile has alleged a LUTPA claim on non-fraudulent grounds and does not make any averments of fraud, fraudulent conduct, or intent to deceive by BP.[358] Therefore, the Court holds that Mabile's LUTPA claim does not need to satisfy the particularity requirement found in Rule 9(b) of the Federal Rules of Civil Procedure.

Second, BP argues that even if Rule 9(b) does not apply, Mabile's allegations are "merely factually unsupported legal conclusions that fail to satisfy the plausibility standard set forth in *Twombly* and *Iqbal*."[359] BP asserts that Mabile has not identified any misrepresentations that BP allegedly made, and that no conclusion can be drawn from Mabile's assertion that a number of similar lawsuits have been filed against BP by others who believed they would receive compensation for any submissions used.[360] According to BP, Mabile "repeatedly makes the conclusory allegation that BP's alleged conduct was deceptive, [but he] does not provide any

---

[357] *Lone Star Ladies Investment Club v. Schlotzsky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001).

[358] *See* Rec. Doc. 28 at 8–9 ("BP's misrepresentation and failure to provide Mr. Mabile with compensation constitute deceptive practices . . . [and] BP's uncompensated use of the Mabile Cap is an unfair act declared unlawful under Louisiana's Unfair Practices and Consumer Protection Law."); Rec. Doc. 31 at 5–7 ("The maneuvers BP used to acquire the Mabile Cap's schematic and design, and BP's uncompensated use thereof, are the type of deceptive and unfair acts condemned by LUTPA.").

[359] Rec. Doc. 30-1 at 25.

[360] *Id.* at 25–26.

supporting factual allegations."[361]

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[362] Though "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," the plaintiff is required to assert more than mere labels, speculation, or formulaic recitations of the elements in order to state his claim.[363]

Here, Mabile has alleged a series of deceptive, unfair, and/or unjust acts by BP, including creating a website to solicit ideas to stop the oil spill, soliciting Mabile's design through that website and through in-person meetings, misrepresenting that a design successfully used would be compensated or acknowledged, obtaining and using Mabile's schematic to cap the oil spill, and failing to compensate or acknowledge Mabile.[364] While the Court agrees with BP that the existence of other lawsuits involving similar allegations is not probative evidence of misconduct, the Court finds that, taking all well-pleaded facts as true as required on a motion to dismiss, Mabile's allegations offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or a mere "formulaic recitation of the elements."[365] Here, the factual allegations, taken as a whole, provide sufficient support for a claim under LUTPA, *i.e.* that Mabile suffered "an ascertainable loss of money or movable property . . . as the result of the use or employment by another person

---

[361] *Id.*

[362] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (citing *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

[363] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

[364] Rec. Doc. 28 at 8–9.

[365] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

of an unfair or deceptive method, act or practice . . . ."[366]  Though BP argues that Mabile's LUTPA

claim should fail because he did not provide greater detail on how the issue of compensation and

acknowledgement was misrepresented by BP, *Iqbal* and *Twombly* made clear that a plaintiff is still

not required to provide "detailed factual allegations" in his complaint to survive a motion to

dismiss.[367]  Therefore, the Court finds that Mabile has plausibly stated a claim under LUTPA, and

accordingly will deny BP's motion to dismiss Mabile's unfair trade practices claim.

### 3.   Unjust Enrichment

BP argues that Mabile's unjust enrichment claim fails on two grounds.[368] First, BP avers

that Mabile's claim fails because unjust enrichment under Louisiana law is only available when

there is no other remedy at law for the alleged conduct.[369] Second, BP asserts that, even if Mabile's

unjust enrichment claim is not precluded by other available remedies, Mabile has failed to

plausibly allegation that BP was "enriched without cause at the expense of" Mabile.[370]

In response, Mabile contends that, under Rule 8(d) of the Federal Rules of Civil

Procedure,[371] he may plead separate, inconsistent claims in the alternative such as unjust

enrichment.[372] Mabile argues he has sufficiently stated all five elements of unjust enrichment as

---

[366] La. Civ. Code § 51:1409.

[367] *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

[368] Rec. Doc. 30-1 at 26–30.

[369] *Id.*

[370] *Id.*

[371] "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient . . . . A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d).

[372] *See Orx Res., Inc. v. Autra*, No. CIV.A. 09-4451, 2009 WL 3447256, at *2 (E.D. La. Oct. 20, 2009) (Africk, J).

an alternatively-pled claim: (1) there was an enrichment for BP; (2) there was an impoverishment for Mobile; (3) there is a connection between the enrichment and the resulting impoverishment; (4) there was an absence of justification or legal cause for either; and (5) in the alternative, "if this Court finds there is no other remedy available at law," then there is no other remedy at law available to Mobile.[373] Mobile cites several cases in the Eastern District of Louisiana, decided by other sections, as support, where an alternatively-pled unjust enrichment claim was not dismissed.[374]

The Louisiana Civil Code clearly states that unjust enrichment "shall not be available if the law provides another remedy for the impoverishment [of a plaintiff] or declares a contrary rule."[375] The Supreme Court of Louisiana has held that unjust enrichment is a remedy "subsidiary in nature," applicable only "to fill a gap in the law where no express remedy is provided."[376] As the Fifth Circuit held in *Ferrara Fire Apparatus, Inc. v. JLG Indus., Inc.*, "[t]he important question is whether another remedy is available, not whether the party seeking a remedy will be successful."[377]

Here, Mobile's unjust enrichment claim is based on the same factual premises and alleged

---

[373] Rec. Doc. 28 at 10–11, 13–15. *See Carriere v. Bank of Louisiana*, 702 So.2d 648 (La. Dec. 13, 1996); *Orx Res., Inc. v. Autra*, No. CIV.A. 09-4451, 2009 WL 3447256, at *2 (E.D. La. Oct. 20, 2009 ) (Africk, J.).

[374] *See id.* (holding that the plaintiff properly pled an unjust enrichment claim in the alternative, as permitted by Rule 8(d)); *Mayer v. Lamarque Ford, Inc*, No. CIV. A. 00-1325, 2001 WL 175232, at *2 (E.D. La. Feb. 16, 2001) (Clement, J.) (allowing plaintiff to plead unjust enrichment as an alternative "in conjunction with numerous other claims for the same alleged wrong," but only allowing it to reach the jury if the jury found that the plaintiff had no other remedy at law); *Endotech USA v. Biocompatibles International PLC*, No. CIV.A. 00-0957, 2000 WL 1594086, at *14 (E.D. La. Oct. 24, 2000) (denying motion to dismiss for unjust enrichment claim pleaded in the alternative).

[375] La. Rev. Stat. 2298.

[376] *Walters v. MedSouth Record Mgmt.*, 38 So. 3d 243, 244 (La. 2010) (internal citations and quotation marks omitted).

[377] 581 F. App'x 440, 443–44 (5th Cir. 2014). *See also Cenac Inland, LLC v. River Valley Shipyards, LLC*, No. CIV.A. 12-2260, 2013 WL 1786641, at *4 (E.D. La. Apr. 25, 2013) (Brown, J.) (holding that, where a court finds that the plaintiff has stated a claim for the conduct alleged, the Court "must dismiss Plaintiff's alternative claim for unjust enrichment, irrespective of whether Plaintiff is ultimately able to successfully pursue its claim.").

wrong as his LUTPA and conversion claims.[378] For example, Mabile argues that BP is liable for unjust enrichment because it made "deceitful solicitations" for and "uncompensated use of" his invention, while his LUTPA claim is based on "deceptive practices" to "solicit potential solutions" that led to "uncompensated use of the Mabile Cap."[379] Additionally, Mabile's unjust enrichment claim argues that BP was enriched by its "unauthorized use of the Mabile cap" and that Mabile was impoverished by BP failing to compensate him for his efforts;[380] likewise, his conversion claim is based on "BP's unlawful exercise of dominion over the Mabile Cap design" and "refus[al] to compensate or recognize Mr. Mabile for the use of the Mabile Cap design."[381] As the Court held *supra*, Mabile has adequately alleged his claims for conversion and for unfair trade practices under LUTPA.

In *Walters v. MedSouth Record Mgmt., LLC*, the Louisiana Supreme Court held that a plaintiff who alleged that he had suffered harm as a "direct result of the negligent and tortious conduct" of the defendant could not seek to recover under unjust enrichment, even though the tort claims were held to be prescribed.[382]  Likewise, in *Westbrook v. Pike Elec., L.L.C.*, another section of the Eastern District of Louisiana dismissed an unjust enrichment claim when the plaintiff had also alleged, *inter alia*, a violation of LUTPA.[383] Accordingly, because Mabile has other remedies

---

[378] *See* Rec. Doc. 30-1 at 27–28.

[379] *Compare* Rec. Doc. 28 at 8–9 (Mabile's LUTPA claim) *with* Rec. Doc. 28 at 10 (Mabile's unjust enrichment claim).

[380] Rec. Doc. 28 at 10.

[381] *Id*. at 7.

[382] 38 So.3d 243, 244 (La. 2010). *See also Gallant Investments, Ltd. v. Illinois Central R. Co.*, 7 So.3d 12, 18 (La. App. 1 Cir. Feb. 13, 2009) ("we conclude that any equitable action for unjust enrichment is precluded by the availability of the unambiguously-pleaded delictual action"); *Dugas v. Thompson*, 2011-0178 (La. App. 4 Cir. June 29, 2011), 71 So. 3d 1059, 1068 (holding that an unjust enrichment claim was precluded by the tort of conversion).

[383] 799 F. Supp.2d 665, 672 (E.D. La. 2011) (Duval, J.).

available to him, this Court finds he is precluded by Louisiana law from asserting a claim of unjust enrichment.[384]

Mabile argues that the Court should not dismiss his unjust enrichment claim because it was properly pled in the alternative under Rule 8(d), and points to other sections of the Eastern District of Louisiana that have allowed plaintiffs in the past to proceed with an alternatively-pled unjust enrichment claim.[385] However, as this Court held in *JP Mack Indus. LLC v. Mosaic Fertilizer, LLC*, when a court finds that there are other remedies at law available, an unjust enrichment claim is precluded by the plain words of Louisiana substantive law, regardless of whether it is was pled in the alternative under federal procedural law.[386] "In Louisiana, by law, an unjust enrichment claim is a 'subsidiary' claim, not an alternative claim."[387] Importantly, it is the availability of another remedy at law that determines whether an unjust enrichment claim is barred, and not the outcome of Mabile's other causes of action.[388] Therefore, whether Mabile has brought an unjust enrichment action alone or in the alternative to other claims is irrelevant once the Court determines that Louisiana state law precludes it entirely. Accordingly, the Court will grant BP's motion to dismiss Mabile's unjust enrichment claim.

**E.    *Whether Federal Patent Law Preempts Mabile's Claims***

Finally, BP argues that both Mabile's conversion claim and unfair trade practices claim

---

[384] *See Bauer v. Dean Morris, L.L.P.*, No. 08-5013, 2011 WL 1303806, at *8 (E.D. La. Mar. 30, 2011) (Duval, J.).

[385] *See* Rec. Doc. 31 at 15.

[386] 970 F. Supp. 2d 516, 521 (E.D. La. 2013) (Brown, J.).

[387] *Id.*

[388] This holding is consistent with the analysis of several other sections of the Eastern District of Louisiana. *See, e.g.*, *Patterson v. Dean Morris, L.L.P.*, No. 08–5014, 2011 WL 1743617 (E.D. La. May 6, 2011) (Duval, J.)(holding that "[t]he availability of an alternative remedy bars [the plaintiff's] claim for unjust enrichment and entitles [the defendant] to summary judgment on her claim of unjust enrichment" and noting that the fact that the plaintiff failed to prevail on other remedies does not negate the fact that such remedies were available to the plaintiff).

under LUTPA are preempted.[389] BP asserts that Mabile's state law claims are all premised upon BP's alleged use of his Mabile Cap design. Generally, BP argues that, because Mabile publicly disclosed his idea, does not allege it to have been confidential, and does not have a patent on his invention, this Court must find that his state law claims are preempted.[390] In opposition, Mabile asserts that his claims are not preempted because he does not seek patent law remedies and his claims do not offend the primary objectives of federal patent law.[391]

Under the Supremacy Clause of the United States Constitution, a state law that conflicts with federal law is without effect.[392] There are three types of preemption: explicit, field, or conflict preemption.[393] Here, BP argues that Mabile's claims conflict with federal patent law.[394] "Conflict preemption occurs when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"[395]

Federal Circuit law governs whether federal patent law preempts a state law claim.[396] The Federal Circuit has stated that "[f]ederal law preempts state law that offers 'patent-like protection' to discoveries unprotected under federal patent law."[397] The Supreme Court has further noted that

---

[389] Rec. Doc. 30-1 at 11–13. Because the Court has found that Mabile's unjust enrichment claim is precluded by Louisiana state law, the Court will not address BP's arguments that it is preempted by federal patent law.

[390] Rec. Doc. 30-1 at 7.

[391] Rec. Doc. 31 at 20.

[392] U.S. Const. art. VI, cl. 2; *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1377 (Fed. Cir. 2005).

[393] *Ultra-Precision Mfg.*, 411 F.3d at 1377.

[394] Rec. Doc. 30-1 at 11.

[395] *Ultra-Precision Mfg.*, 411 F.3d at 1377 (quoting *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979) (internal quotations and citation omitted)).

[396] *Id.* at 1376.

[397] *Id.* at 1377–78 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989)).

"[a] state law that substantially interferes with the enjoyment of an unpatented utilitarian or design conception which has been freely disclosed by its author to the public at large impermissibly contravenes the ultimate goal of public disclosure and use which is the centerpiece of federal patent policy."[398] The Federal Circuit has further found that the objectives of federal patent law include "seek[ing] to foster and reward invention," "promot[ing] disclosure of inventions to stimulate further innovation and to permit the public to practice the invention once the patent expires," promoting "the stringent requirements for patent protection . . . to assure that ideas in the public domain remain there for the free use of the public," providing a "clear federal demarcation between public and private property," and promoting "nationwide uniformity in patent law."[399] "A state cause of action that frustrates these objectives is preempted."[400] The Federal Circuit has determined that patent laws will not preempt state law claims if the state claims include additional elements not found in the federal patent law cause of action and are not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law.[401]

### 1.  Conversion

BP argues that federal patent law preempts claims for the tort of conversion under Louisiana law when they are premised on an alleged unauthorized use of a publicly disclosed, unpatented invention.[402] According to BP, in *BASF Agrochemical Prods. v. Unkel*, a section of the Western District of Louisiana held that a conversion claim for intangible intellectual property was

---

[398] *Bonito Boats*, 489 U.S. at 156–57.

[399] *Ultra-Precision Mfg.*, 411 F.3d at 1378 (quoting *Bonito Boats*, 489 U.S. at 162–63; *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979)).

[400] *Id.* (citing *Bonito Boats*, 489 U.S. at 156–57).

[401] *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1306 (Fed. Cir. 1999).

[402] Rec. Doc. 30-1 at 12 (citing *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 597–98 (5th Cir. 2015); *BASF Agrochemical Prods. v. Unkel*, No. 05-478, 2006 WL 3533133, at *7 (W.D. La. Dec. 7, 2006)).

preempted by federal patent law.[403] Likewise, BP represents that in *Spear Mktg., Inc. v. BancorpSouth Bank*, the Fifth Circuit also held a conversion claim for intangible property was preempted.[404] BP also cites *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, where the Federal Circuit held an unjust enrichment claim was preempted because the plaintiff sought a "royalty-like award" from Ford's use of technical information that the plaintiff made public through its patents.[405]

Mobile counters that the preemption analysis is an ad hoc inquiry that turns on the underlying conduct asserted by the plaintiff, not the name of the claim.[406] Thus, not all conversion claims will be preempted.[407] Mobile argues that the *BASF* court found that the plaintiff's conversion claim was preempted, not simply because some intangible property was at issue, but because the underlying conduct for the conversion claim was the exact same as the conduct underlying the plaintiff's patent infringement claim.[408] Likewise, in *Spears Marketing*, Mobile asserts that the Fifth Circuit was examining the preemption of a Texas law conversion claim for the theft of computer software under the Copyright Act, "which is wholly inapplicable to this case."[409]

Additionally, Mobile states that his conversion claim does not offend or obstruct the "three

---

[403] *Id.* (citing 2006 WL 3533133 at *7).

[404] Rec. Doc. 30-1 at 12 (citing 791 F.3d at 597–98).

[405] 411 F.3d 1369, 1380 (Fed. Cir. 2005).

[406] Rec. Doc. 31 at 21 (citing *Lyden v. Nike, Inc.*, No. 13-cv-00662-HZ, 2014 WL 2563401, at *2 (D. Or. June 6, 2014); *Powell v. Home Depot U.S.A., Inc.*, 2010 WL 375796, at *3 (S.D. Fla. Jan. 26, 2010)).

[407] *Id.*

[408] *Id.* (citing *BASF*, 2006 WL 3533133, at *7).

[409] *Id.* (citing 791 F.3d at 597–98; 17 U.S.C. § 102(b); *Kaminski v. BP Expl. & Prod., Inc.*, 975 F. Supp. 2d 1220 (M.D. Fla. 2013)).

primary objectives of patent law: (1) providing an incentive to invent; (2) promoting the full disclosure of inventions; and (3) ensuring that 'that which is in the public domain cannot be removed therefrom by action of the State.'"[410] Here, Mabile represents that requiring BP to compensate Mabile for acquiring his schematic and using the information therein to reconstruct the Mabile Cap without his authorization "provides incentive to invent, and also encourages inventors to disclose their information to the public . . . [and] does not hinder BP's, nor the public's, use of the Mabile Cap."[411]

In *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, the Federal Circuit indicated that courts should use a conflict preemption analysis to determine whether a state law cause of action is preempted by federal patent law.[412] The Federal Circuit has further advised courts to examine the defendant's allegedly tortious conduct to determine if a state law tort claim is in conflict with federal patent law.[413] Thus, the Court must examine whether entertaining the *specific* conversion claim pled by Mabile "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[414]

For example, in *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, the Supreme Court found that federal patent law preempts a state law claim against the plaintiff's competitor when it was premised on the duplication of the plaintiff's unpatented boat hull design that the plaintiff had

---

[410] *Id.* (quoting *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480-81 (1974)).

[411] *Id.* at 22.

[412] 153 F.3d 1318, 1334–35 (Fed. Cir. 1998), *overruled in part on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999).

[413] *Id.* at 1335; *see also BASF Agrochemical Prod. v. Unkel*, No. 05 CV 1478, 2006 WL 3533133, at *6–7 (W.D. La. Dec. 7, 2006).

[414] *Ultra-Precision Mfg.*, 411 F.3d at 1378 (citing *Univ. of Colo. Found. v. Am. Cyanamid*, 196 F.3d 1366, 1371 (Fed. Cir. 1999) (evaluating whether an unjust enrichment claim was preempted as pled)).

marketed and sold to the public for six years.[415] Likewise, in *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, the Federal Circuit found that an unjust enrichment claim was preempted when the plaintiff alleges that the defendant used its technology that the plaintiff publicly disclosed in two patents.[416] Finally, in *Spear Mktg., Inc. v. BancorpSouth Bank*, the Fifth Circuit analyzed a Texas state law conversion claim for commercially available computer software trade secrets under the Copyright Act.[417] Though federal patent law preemption was not at issue, the court's analysis also focused on the underlying alleged conduct of the conversion claim: the Fifth Circuit stated that "we have held that claims for conversion of intangible property are preempted" by the Copyright Act, but further clarified that "[t]o the extent that SMI's claim alleges conversion of physical property, it is not preempted by § 301(a)."[418]

By contrast, in *Univ. of Colo. Found. v. Am. Cyanamid*, the Federal Circuit held that an unjust enrichment claim for the copying of the plaintiffs' confidential research was not preempted because it "springs not from an attempt to enforce intellectual property rights, but instead from Cyanamid's alleged wrongful use of the [the plaintiffs'] research results."[419] When *American Cyanamid* came before the Federal Circuit a second time, the court further stated that the unjust enrichment claim was not "patent-like" because it sought "to remedy the breach of a contract implied in law for disclosure of their confidential manuscript in exchange for a promise not to

---

[415] 489 U.S. 141, 144–45 (1989).

[416] *Ultra-Precision Mfg.*, 411 F.3d at 1379–80. *See also BASF Agrochemical Prods. v. Unkel*, No. 05 CV 1478, 2006 WL 3533133, at *1, 6 (W.D. La. Dec. 7, 2006) (holding that a conversion claim was preempted when it was based on the same underlying conduct as the plaintiffs' patent infringement claim, *i.e.* that defendants used their patented technology in an unauthorized manner).

[417] 791 F.3d 586, 597–98 (5th Cir. 2015).

[418] *Id.* at 597.

[419] 196 F.3d 1366, 1371–72 (Fed. Cir. 1999).

disseminate the idea without the [the plaintiffs'] consent."[420] In other words, the plaintiffs' claim was not preempted because they "did not seek to prevent the use of information they placed in the public domain."[421]

In support of his conversion claim, Mabile represents in his amended complaint that, in the weeks following the *Deepwater Horizon* crisis, BP tried a variety of methods to seal the oil well, to no avail.[422] Mabile alleges that BP was "[d]esperate to find a solution for the oil spill it created" and accordingly launched a website dedicated to soliciting the public for ideas on how to stop the discharge of crude oil into the Gulf of Mexico.[423] As the crisis was ongoing, Mabile represents that he "labored tirelessly to create an invention" to stop the oil spill, resulting in the creation of the "Mabile Cap."[424] Mabile alleges that BP and/or its agents "induced" Mabile to submit his schematic to BP "by misrepresenting that [he] would receive acknowledgement and/or economic benefit if the Mabile Cap design was used to successfully cap the wellhead."[425] Mabile states that he had sole possession of his invention before contacting BP, and that his "unique, successful design was not generally known to BP or available in the public domain" prior to his submission.[426] Mabile further alleges that, "[w]ithout [his] consent, BP intentionally and willfully exercised authority over [his] intellectual property and the Mabile Cap schematic in its effort to stem the

---

[420] *Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1306 (Fed. Cir. 2003).

[421] *Id.* at 7 (emphasis omitted).

[422] *Id.*

[423] *Id.*

[424] *Id.*

[425] Rec. Doc. 28 at 7.

[426] *Id.* at 6–7.

flow of oil into the Gulf."[427] Mabile avers that, "[d]espite furnishing BP with the solution to prevent

a catastrophic ecological disaster from becoming even worse" after BP made online and in-person

solicitations for proposals, BP failed to compensate or recognize Mabile; thus, Mabile asserts that

"BP's actions constitute an improper use of [his] property."[428]

Accepting the above allegations as true and construing the complaint in favor of Mabile on

this motion to dismiss, the Court finds Mabile's conversion claim is distinguishable from the

underlying conduct of the preemption cases cited by BP. The thrust of Mabile's argument is that

he built and provided the Mabile Cap specifically for BP and at its request, all in the span of a few

weeks during an ongoing national crisis, because BP allegedly induced him to do so through

misrepresentations that he would be compensated or acknowledged for his work.[429] In his

conversion claim, Mabile does not assert a general right to exclude BP and the world at large from

using the Mabile Cap; instead, his cause of action is specific to one entity through its alleged

misrepresentations that allowed it to access and allegedly use the Mabile Cap. Thus, the alleged

conduct underlying Mabile's conversion claim against BP is not analogous to a competitor copying

publicly available, unpatented products like in *Bonito Boats*,[430] or a company drawing on technical

information to create a device years after it became publicly available in a plaintiff's patent

applications as in *Ultra-Precision*.[431] Moreover, the rationale behind *BASF* and *Spear Mktg* is

inapplicable to Mabile's case too; *BASF* found preemption because a conversion claim was

premised on the same conduct as the plaintiff's patent infringement claim, which is not at issue

---

[427] *Id*. at 7.

[428] *Id.*

[429] *See* Rec. Doc. 28 at 7.

[430] *Bonito Boats*, 489 U.S. at 156–57.

[431] *Ultra-Precision Mfg.*, 411 F.3d at 1378.

here,[432] and *Spear Mktg* dealt with Texas conversion law under the Copyright Act.[433] Rather, Mabile's claim is more closely analogous to the *American Cyanamid* cases, where a state law claim for the wrongful use of intellectual property conditionally provided to the defendant was not preempted by federal patent law.[434] Though the invention in *American Cyanamid* was disclosed after relying on a promise of confidentiality, the Court finds the same arguments applicable to Mabile: he alleges that he only disclosed his idea based on misrepresentations by BP and the "justifiabl[e] belie[f]" that he would be compensated or acknowledged.[435] Therefore, the Court finds that Mabile's state law conversion claim is based on factual allegations beyond the conduct covered under federal patent law.

However, BP also asserts that, even assuming *arguendo* that it did use Mabile's design to construct its 3-ram Capping Stack without compensating Mabile, it was permitted to do so because Mabile's invention was "publicly known."[436] BP argues that Mabile provided the schematic to BP and a Coast Guard engineer, performed two demonstrations of the Mabile Cap,[437] and has made no allegations that he kept his idea secret or confidential.[438] Therefore, BP asserts the invention was "fully exposed to the public" and available for BP and the world to freely use.[439]

---

[432] *BASF Agrochemical Prod. v. Unkel*, No. 05 CV 1478, 2006 WL 3533133, at *6–7 (W.D. La. Dec. 7, 2006).

[433] 791 F.3d 586, 597–98 (5th Cir. 2015).

[434] *Am. Cyanamid*, 196 F.3d at 1371–72.

[435] Rec. Doc. 28 at 8.

[436] Rec. Doc. 38 at 3.

[437] As the Court held *supra*, the Court will not consider on a motion to dismiss any factual allegations made by BP that exist outside of the pleadings.

[438] Rec. Doc. 30-1 at 11.

[439] *Id.* at 11–12; Rec. Doc. 38 at 3 (citing *Bonito Boats*, 489 U.S. at 165).

The Supreme Court and the Federal Circuit have recognized that federal patent law allows anyone to copy and use unpatented inventions that exist in the public domain, and state laws that seek to protect those inventions from use are preempted. For example, in *Bonito Boats*, the Supreme Court held that a plaintiff's state law claim was preempted by patent law when that plaintiff had freely chosen to "expose its hull design to the public in the marketplace, eschewing the bargain held out by the federal patent system of disclosure in exchange for exclusive use."[440] Likewise, in *Ultra-Precision*, the plaintiff met with Ford to propose a solution to a problem Ford was facing in its automobiles, and later publicly disclosed the technology in a patent application before Ford began using it. The Federal Circuit held that, because Ford did not adopt the plaintiff's concepts "until well after [plaintiff's] alleged solution to the NVH problem became publicly known" through its patent applications, his state law claim was preempted.[441] Finally, in *Pronova Biopharma Norge AS v. Teva Pharmaceuticals USA, Inc*, the Federal Circuit found that a drug patent was invalid because the plaintiff had voluntarily sent samples without restriction to at least four doctors prior to receiving a patent.[442]

By contrast, in *Wawrzynski v. H.J. Heinz Co.*, the Federal Circuit examined whether it had jurisdiction to review state law claims arising out of the alleged uncompensated use of patented and unpatented ideas that the plaintiff had pitched to Heinz.[443] Though the plaintiff had disclosed his ideas to Heinz, the Federal Circuit expressed doubt that his state law claims were preempted; instead, the court stated that "it appears that nothing in federal patent law now stands in the way

---

[440] *Bonito Boats*, 489 U.S. at 159.

[441] *Id.*

[442] 549 F. App'x at 936–38 (internal quotations omitted) (quoting *Dey, L.P. v. Sunovion Pharm., Inc.*, 715 F.3d 1351, 1355 (Fed. Cir. 2013)).

[443] 728 F.3d 1374, 1380 (Fed. Cir. 2013).

of [the plaintiff] pursuing his state law claims."[444] When the case was subsequently heard by the Third Circuit, it concurred, holding that state law claims for the plaintiff's unpatented design and marketing ideas that were disclosed to Heinz through correspondence, promotional materials, and in person meetings were not preempted by federal patent law.[445]

In his amended complaint, Mabile asserts that "the Mabile Cap's unique, successful design was not generally known to BP or available in the public domain."[446] Moreover, Mabile states that prior to submitting his schematic to BP, Mabile "had sole possession of his intellectual property and schematic for his Mabile Cap invention."[447] Mabile also argues that the United States Coast Guard engineer who received a copy of the schematic was "[u]pon information and belief . . . acting on behalf of BP as an engineer/technical consultant to cap the oil flow"[448] and that there are no allegations in his amended complaint of other individuals attending the Mabile Cap demonstrations or receiving the schematic.[449] Furthermore, Mabile asserts that even if there was such an allegation, merely demonstrating an invention without revealing the technical specifics of the device does not render it non-confidential, because it "still could not be duplicated by others simply from viewing this demonstration" without access to the schematic.[450]

As a preliminary matter, the Court must determine if providing the schematic to Hansen constitutes public disclosure for the purposes of federal patent law preemption. As the Fifth Circuit

---

[444] *Id.* at 1381.

[445] *Wawrzynski v. H.J. Heinz Co.*, 574 F. App'x 99, 102 (3d Cir. 2014).

[446] Rec. Doc. 28 at 6.

[447] *Id.* at 7.

[448] *Id.* at 5.

[449] Rec. Doc. 42 at 5.

[450] *Id.* at 5–6.

has held, a district court should not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" when determining if a claim has facial plausibility.[451] Here, Mabile supports his allegation that Hansen was BP's agent "[u]pon information and belief."[452] Moreover, though it is unclear from the face of the complaint how Hansen received notice of or was invited to Mabile's demonstration, it is plausible under the facts alleged and the unique circumstances of the oil spill that he was present at the demonstration on behalf of BP. For example, in his amended complaint, Mabile asserts that he first held a demonstration for at least two BP engineers, Jason French and Thomas Pearce, after which French called another BP engineer, Al Ledet, to discuss Mabile's device.[453] Mabile represents that it was Ledet who requested a second demonstration of the Mabile Cap later that day, and it was at that BP-requested demonstration when Kurt Hansen becomes involved.[454] Mabile further states that Hansen commented that the "Mabile Cap was the best device he had seen for capping the oil spill," raising the reasonable inference that Hansen had seen more than just Mabile's proposed solution, and that Hansen requested a copy of the schematic and a DVD of the demonstration.[455] Accordingly, based on the facts alleged and drawing all reasonable inferences therefrom, the Court finds that there are sufficient factual allegations for the purposes of this motion to dismiss to accept Mabile's representation that Kurt Hansen was acting on behalf of BP when he received the schematic and attended the demonstration. Therefore, Hansen's involvement as an agent of BP does not affect

---

[451] *Gentilello*, 627 F.3d at 544; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.")

[452] Rec. Doc. 28 at 5.

[453] *Id.*

[454] *Id.*

[455] *Id.*

the Court's preemption analysis. Additionally, while the parties have offered conflicting assertions regarding who else was in attendance at Mabile's demonstrations and whether it was publicly televised, these disputed facts are not in Mabile's amended complaint.[456] Thus, the Court will not consider these allegations at this time.

The Court holds that Mabile has sufficiently alleged that he only disclosed his schematic and invention to BP and its agents after BP allegedly "induced" him to do so. The Court finds that Mabile's claim is more analogous to *Wawrzynski v. H.J. Heinz Co.*, where the plaintiff disclosed his patented and unpatented ideas in person and through the mail in order to solicit Heinz's business.[457] There, neither the Federal Circuit nor the Third Circuit found that the state claims should be preempted based on public disclosure of the ideas. Likewise, the Federal Circuit's discussion in *Ultra-Precision* of when the plaintiff's ideas were publicly disclosed is also applicable to Mabile. [458] There, the court specially noted that Ford did not immediately use the information provided by plaintiff that was disclosed during the plaintiff's meetings with Ford, but rather waited until after the ideas were publicly disclosed in the plaintiff's patent applications.[459]

Additionally, the Court notes that, according to Mabile's amended complaint, he did not "freely disclose[]" his invention to the public like the plaintiffs in *Bonita Boats* (selling its unpatented product), *Pronova* (sending out samples), or *Ultra-Precision* (filing public patent applications); rather, he asserts that "BP and/or its agents *induced*" him to provide his invention to BP through "misrepresentations" about compensation if the device was successfully used.[460]

---

[456] *See* Rec. Doc. 28.

[457] 574 F. App'x 99, 102 (3d Cir. 2014).

[458] *Id.*

[459] *Id.*

[460] Rec. Doc. 28 at 6–7.

Therefore, this Court finds that, accepting the allegations of his amended complaint as true, Mabile's invention was not "publicly" or "freely disclosed" when he submitted his unpatented design to BP at its request and under the assumption that he would be compensated if it was successfully used.

Finally, BP argues that Mabile's state law conversion claim, if successful, "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" and federal patent law.[461] BP argues Mabile's conversion claim subverts patent law's "stringent requirements and procedures that an inventor must satisfy in order to secure a property right in his or her invention."[462] In opposition, Mabile argues that having BP compensate him for the use of the design provides an incentive to invent and encourages inventors to disclose their information to the public.[463]

In *Bonito Boats*, the Supreme Court found that a state law claim was preempted because it "substantially interferes with the enjoyment of an unpatented utilitarian or design conception which has been freely disclosed by its author to the public at large impermissibly contravenes the ultimate goal of public disclosure and use which is the centerpiece of federal patent policy."[464] Likewise, in *Ultra-Precision*, the Federal Circuit found that permitting an unjust enrichment claim against the use of technology openly disclosed in the plaintiff's patent applications would "frustrate[]Congress's objective of 'creating an incentive to develop inventions that meet the rigorous requirements of patentability.'"[465] The court went on to note that if the unjust enrichment

---

[461] *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1378 (Fed. Cir. 2005)).

[462] Rec. Doc. 38 at 4.

[463] Rec. Doc. 31 at 22.

[464] *Bonito Boats*, 489 U.S. at 156–67.

[465] *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1380–81 (Fed. Cir. 2005) (quoting *Bonito*

claim was available there, "a would-be inventor need not satisfy any of the rigorous standards of patentability to secure a perpetual patent-like royalty under state law based on the use of an unpatented idea."[466]

By contrast, in *Kewanee Oil Co. v. Bicron Corp.*, the Supreme Court found that state trade secret laws are not preempted because they support rather than conflict with the objectives of Congress in passing patent laws.[467] The Court stated that the laws have a "decidedly beneficial effect on society" by "encourag[ing] invention in areas where patent law does not reach," fostering competition, and avoiding the deprivation "of the use of valuable, if not quite patentable, invention" by the public.[468] If trade secret laws were preempted, the "innovative entrepreneur with limited resources would tend to confine his research efforts" against disclosure "and society, as a whole, would suffer."[469] Moreover, "[t]he holder of a trade secret would not likely share his secret with a manufacturer who cannot be placed under binding legal obligation to pay a license fee or to protect the secret. The result would be to hoard rather than disseminate knowledge."[470] "The detrimental misallocation of resources and economic waste that would thus take place if trade secret protection were abolished . . . cannot be justified by reference to any policy that the federal patent law seeks to advance."[471]

Additionally, in *Aronson*, the Supreme Court held that permitting inventors to enter into

---

*Boats*, 489 U.S. at 160–63.

[466] *Id.* at 1381.

[467] *Id.*

[468] *Id.*

[469] *Id.* at 486.

[470] *Id.* (citing *Painton & Co. v. Bourns, Inc.*, 442 F.2d at 223).

[471] *Id.* at 486–87.

perpetual, pre-patent licensing agreements "provides an additional incentive to invention."[472] The Court stated that allowing an inventor "to make arrangements for the manufacture of her [invention] furthers the federal policy of disclosure of inventions . . . [i]t is equally clear that the design entered the public domain as a result of the manufacture and sale of the [invention] under the contract."[473] Finally, the Supreme Court noted that "[e]nforcement of the agreement does not discourage anyone from seeking a patent."[474]

In light of the Court's finding *supra* that Mabile brings a limited claim of conversion premised on the specific alleged conduct of BP, the Court finds that the reasoning and policy objectives raised in *Kewanee Oil* and *Aronson* are more persuasive here. Permitting conversion claims against private entities who solicit aid from outside parties, represent that compensation or acknowledge will be given to successful submissions, accept those submissions from individuals who expend great time and labor in creating solutions, and then decline to pay them afterwards will aid, rather than hinder, the objectives of patent law and have a "decidedly beneficial effect on society."[475] Allowing such a claim to go forward would promote innovation and the dissemination of information by encouraging inventors to respond to calls for technical assistance without fear that disclosing their invention on the promise of compensation would render them without legal recourse for its uncompensated use. By contrast, preemption here would discourage such invention and disclosure, and the "result would be to hoard rather than disseminate knowledge."[476]

If Louisiana conversion law was preempted in this case, then, like with *Kewanee Oil Co.*,

---

[472] *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979).

[473] *Id.* at 263.

[474] *Id.*

[475] *Id.*

[476] *Id.* (citing *Painton & Co. v. Bourns, Inc.*, 442 F.2d 216, 223 (2nd Cir. 1971)).

the "innovative entrepreneur with limited resources would tend to confine his research efforts" against disclosure "and society, as a whole, would suffer."[477] This is particularly true during times of immediate crisis. If the Court was to hold that preemption applies in such a case, would-be inventors would be discouraged from responding to calls for innovative solutions to national disasters or would be wary that promises to pay for such inventions may be withdrawn as soon as the schematic has transferred hands. Additionally, those entities searching for emergency solutions benefit from such assurances for inventors; if this Court holds that preemption applies in such circumstances, entities seeking solutions would be forced to wait while inventors sought patents to protect their works or to be forced to engage in costly pre-disclosure negotiations for confidentiality and compensation with every person alleging to have an invention. A potential holder of an innovative solution "would not likely share his secret with a manufacturer who cannot be placed under binding legal obligation to pay a license fee or to protect the secret."[478] Such a holding would hinder the free exchange of information, reduce the incentive to innovate, and impose great costs on the public at large who must continue to suffer through an ongoing crisis when a potential solution may exist. Thus, the Court finds that preempting Mabile's state law conversion claim here would not interfere with the goals and objectives of federal patent law.

Accordingly, the Court finds that Mabile does not assert a general right to exclude the public from exploiting the ideas in his unpatented Mabile Cap; rather, he asserts one failure to pay claim against one entity who allegedly induced him to forgo his right to "keep his invention secret and reap its fruits indefinitely."[479] Mabile's allegations of inducement and misrepresentation are

---

[477] *Id.* at 486.

[478] *Id.* (citing *Painton & Co. v. Bourns, Inc.*, 442 F.2d at 223).

[479] *Id.* at 151.

what makes BP's alleged use of his property unauthorized. Thus, the Court finds that the state restrictions on the use of unpatented ideas here are "limited to those necessary to promote goals outside the contemplation of the federal patent scheme."[480] Therefore, this Court concludes that Mabile's conversion claim is not preempted by federal patent law.

### 2.   Unfair Trade Practices

BP argues that Mabile's unfair trade practices claim under LUTPA is preempted by federal patent law for the same reasons it asserts that his conversion claim is preempted—the claim is premised upon BP's alleged use of an idea that was publicly disclosed without any confidentiality restrictions.[481] In support, BP cites an Eastern District of New York case, *Sorias v. National Cellular USA, Inc.*[482] In *Sorias*, the court held that the plaintiffs' unfair competition claim was preempted by federal patent law because the plaintiffs made no allegations of unfair competition that are "separate and independent from its patent law claim" of infringement; rather, the claim of unfair competition was "purely based on allegations of patent infringement or copying of an unpatented product."[483] BP also cites a Southern District of Florida case, *Powell v. Home Depot U.S.A, Inc.*, where the defendant had brought state law counterclaims against the plaintiff alleging that it had contributed to or discovered the initial idea for plaintiff's invention, and therefore defendant was the co-inventor.[484] The court determined that co-inventorship is a field that is governed exclusively by federal patent law and therefore the defendant's state law counterclaims

---

[480] *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1382 (Fed. Cir. 2005) (*Bonito Boats,* 489 U.S. at 166).

[481] Rec. Doc. 30-1 at 12.

[482] *Id.* (citing 124 F. Supp. 3d 244, 262 (E.D. N.Y. 2015)).

[483] *Id.*

[484] Nos. 07-80435-CIV, 08-61862, 2010 WL 375796, at *4 (S.D. Fla. Jan. 26, 2010)).

were preempted.[485]

In opposition, Mabile asserts that his LUTPA claim is not based solely on BP's use of his invention but also arises from the means that BP employed to acquire the Mabile Cap schematic and design and BP's failure to compensate him for it.[486] Therefore, Mabile contends that because LUTPA is a broad statute, the elements of which are "markedly different" from those of a patent claim, his LUTPA claim is not preempted.[487] Mabile cites a Western District of Louisiana case, *Total Rebuild, Inc. v. Streamline Hose and Fittings, Inc.*, where the court noted that "Louisiana courts have denied attempts to apply federal patent law preemption to LUTPA claims."[488] In *Total Rebuild*, the plaintiff brought claims for both patent infringement and unfair trade practices alleging that the defendant's conduct in using a configuration "very similar if not identical to" the high pressure safety system designed and built by the plaintiff constituted an unfair method of competition and unfair or deceptive acts or practice.[489] The court concluded that the plaintiff's state law claim required a finding that the defendant's action constituted an unfair or deceptive trade practice and was more than just a parallel way of enforcing its patent rights, that it did not impose requirements that were inconsistent with federal law, and did not serve as an obstacle to any Congressional objectives.[490]

Mabile also cites a Federal Circuit case, *Hall v. Bed Bath & Beyond, Inc.*, in which the court found that a New York state misappropriation action was not preempted by federal patent

---

[485] *Id.* (citing *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999)).

[486] Rec. Doc. 31 at 22.

[487] *Id.*

[488] Rec. Doc. 42 at 1 (citing No. 6:15-01172, 2015 WL 9217451 (W.D. La. Sept. 25, 2015)).

[489] 2015 WL 9217451, at *1.

[490] *Id.* at *6.

law where the plaintiff argued that the defendant copied his proprietary towel that he had showed to the defendant in the course of discussion of a business relationship.[491] Finally, Mabile points to *Rodime PLC v. Seagate Technology, Inc.*, where the Federal Circuit stated that an unfair competition claim that is aimed at preventing unethical and oppressive business practices protects interests different from federal patent law and was therefore not preempted.[492]

Here, like with conversion, the Court must look beyond the name of the cause of action to the underlying conduct alleged to determine whether Mabile's claim under LUTPA is an impermissible attempt to offer patent-like protection to subject matter addressed by federal law.[493] In his amended complaint, Mabile alleges that BP used a website to solicit potential solutions for the oil spill and "[a]s shown by the abundance of lawsuits filed against BP for misappropriating solutions to the oil spill, the individuals who submitted ideas to BP's Website justifiably believed they would receive compensation for any submissions used by or assisting BP in successfully capping the wellhead."[494] Mabile alleges that BP's uncompensated use of the Mabile Cap is an unfair act that is unlawful pursuant to LUTPA and that BP and/or its agents induced Mabile to submit his schematic by misrepresenting that he would receive acknowledgment and/or economic benefit if his design was used by BP.[495] BP contends that the amended complaint does not identify any conduct beyond the use of the Mabile's purported invention that could serve as the basis for a LUTPA claim.[496]

---

[491] Rec. Doc. 42 at 2 (citing 705 F.3d 1357, 1371–72 (Fed. Cir. 2013)).

[492] 174 F.3d 1294, 1306 (Fed. Cir. 1999).

[493] *Id.* at 3 (citing 174 F.3d 1294, 1306 (Fed. Cir. 1999)).

[494] Rec. Doc. 28 at 8.

[495] *Id.* at 8–9.

[496] Rec. Doc. 38 at 5.

For the same reasoning used *supra* in holding that Mabile's conversion claim is not preempted, this Court finds that Mabile's allegations that the methods in which BP acquired and used his schematic were unlawful do not "offer patent-like protections to subject matter addressed by federal law."[497] Mabile's LUTPA claim is premised on the unfair and deceptive trade practices of BP, rather than alleged property rights in an unpatented device. Further, the Court notes that Mabile's LUTPA claim contains additional elements that are "markedly different" from those federal patent law cause of action.[498] As the Federal Circuit held in *Rodime PLC*, "laws will not preempt such claims if they include additional elements not found in the federal patent law cause of action."[499]

Thus, the Court finds the Federal Circuit's reasoning in *Rodime PLC* most persuasive here, as the court found that an unfair competition claim was aimed at preventing unethical and oppressive business practices and therefore protected interests different from federal patent law.[500] As the Supreme Court has held, a state law targeting unsavory business practices should not be preempted, as "[t]he necessity of good faith and honest, fair dealing is the very life and spirit of the commercial world."[501] As the First Circuit noted, the "the Supreme Court has suggested that states should continue to regulate just these sorts of less-than-upright business practices, even if they incidentally involve intellectual property and information that may be subject to federal patent laws."[502] Moreover, though BP argues that Mabile's claim must be preempted because it is not

---

[497] *Rodime PLC v. Seagate Technology, Inc.*, 174 F.3d 1294, 1306 (Fed. Cir. 1999).

[498] *Id.*

[499] *Id.*

[500] *Id.*

[501] *Kewanee Oil Co.*, 416 U.S. at 480–81.

[502] *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 559 F.3d 1, 3 (1st Cir. 2009).

limited to incremental benefits, the cases in which BP cites for support discuss such a limitation for allegations of co-authorship or contributions to the creation of a patented product rather than state law claims aimed at unfair and deceptive conduct beyond the subject matter addressed by patent law.[503] Here, because it appears that Mabile's LUTPA claim is aimed at preventing unethical and deceptive business practices, rather than asserting a general property right in unpatented technology, does not impose requirements that were inconsistent with federal law, and does not serve as an obstacle to any Congressional objectives, this Court concludes that Mabile's LUTPA claim is also not preempted.

## IV. Conclusion

For the reasons stated above, this Court grants BP's motion to dismiss Mabile's unjust enrichment claim and denies BP's motion to dismiss Mabile's conversion claim and unfair trade practices claim under LUTPA. In sum, the Court finds that Mabile's unjust enrichment claim is precluded by the availability of other remedies at law. Furthermore, the Court holds that Mabile's other state law claims are not preempted by federal patent law, and that Mabile has alleged sufficient facts to state a claim for conversion and an unfair trade practices claim under LUTPA.

Accordingly,

**IT IS HEREBY ORDERED** that BP's "Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim"[504] is **GRANTED IN PART** and **DENIED IN PART**. The

---

[503] *See Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1379 (Fed. Cir. 2005) (finding that plaintiff did not seek the incremental benefits over and above the benefits the public received when the plaintiff published its technology in its patent application); *Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1306 (Fed. Cir. 2003) (holding that an unjust enrichment claim for the unauthorized use of plaintiffs' confidential research to secure a patent was not preempted because, *inter alia*, it was limited to incremental benefits obtained by copying their research); *Powell v. Home Depot U.S.A, Inc.*, No. 07-80435-CIV, 2010 WL 375796, at *5 (S.D. Fla. Jan. 26, 2010) (finding that counterclaim of co-authorship of a patent was preempted because it sought all benefits the plaintiff had received rather than the incremental profits based on defendant's contributions).

[504] Rec. Doc. 30.

Court grants BP's motion to dismiss Mabile's unjust enrichment claim, and denies BP's motion to dismiss Mabile's conversion and LUTPA claims.

   **NEW ORLEANS, LOUISIANA**, this __22nd__ day of September, 2016.

                    **NANNETTE JOLIVETTE BROWN**
                    **UNITED STATES DISTRICT JUDGE**